# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2016 JUN 23 PM 1: 03

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

Civil Action No.       16-cv-

JAMES P. TATTEN,                    '16 − CV − 0 1 6 0 3

     Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, a municipality;
CLERK AND RECORDER DEBRA JOHNSON, in her official capacities; and
LSF9 Master Participation Trust

     Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff James P. Tatten, alleges as follows:

## I. INTRODUCTION

1.     This complaint is filed in response to ORDER AUTHORIZING SALE issued on April 26, 2016 by the Denver District Court in Case Number 2016CV030555, *In the Matter of the Application of LSF9 Master Participation Trust for an Order Authorizing the Public Trustee of DENVER County Colorado, to Sell Certain Property Under a Power of Sale Contained in a Deed of Trust.*

2.     The Denver District Court committed error by granting Defendant LSF9 Master Participation Trust's motion for order authorizing sale of Tatten's home after a "non-judicial" hearing conducted pursuant to C.R.C.P. Rule 120 (Rule 120).

3.     The Denver District Court committed error by making findings of fact and conclusions of law beyond the scope, nature, and purpose of Rule 120.

1

4.   The Denver District Court committed error by conducting a Rule 120 "non-judicial" hearing in violation of the Constitution and laws of the United States of America.

5.   The Denver District Court's order, read along with the court's findings and conclusions, reveals the statutory, procedural, evidentiary, and constitutional failures inherent in Rule 120 and a Rule 120 hearing.

6.   The Denver District Court's findings, conclusions, evidentiary demands and burden of proof related to Tatten's brain injury, disability, and his "capacity to contract" on September 28, 2009  violate 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act; and the Constitution and laws of the United States of America.

7.   Finally, the Denver District Court's ORDER AUTHORIZING SALE violates the Constitution and laws of the United States of America, including due process.

8.   Consequently, any action or auction sale related to Tatten's property by the Denver Public Trustee is void and unenforceable.

9.   Tatten is the lawful owner and/or possessor of the property at 8681 East 29th Avenue, Denver, Colorado 80238.

10.   The facts, circumstances, records, documents, and a partial transcript from the Rule 120 hearing establish that the acts or omissions of the City and County of Denver, together with the Denver Clerk and Recorder, the Denver Public Trustee and LSF9 Master Participation Trust, violated the Constitution and laws of the United States of America, including Tatten's civil and constitutional rights.

11.   The facts, circumstances, records, documents, and a partial transcript from the Rule 120 hearing establish that the acts or omissions of the City and County of Denver, together with the Clerk and Recorder, the Public Trustee and LSF9 Master Participation, were intentional,

malicious, willful, wanton, and/or in reckless disregard for Tatten's constitutionally protected rights.

12.     The facts, circumstances, records, documents, and a partial transcript from the Rule 120 hearing establish that the acts or omissions of the City and County of Denver, together with the Denver Clerk and Recorder, the Denver Public Trustee and LSF9 Master Participation, were committed intentionally, maliciously, willfully, wantonly and/or in recklessly to collect a time-barred debt from Tatten, a disabled homeowner.

13.     Pursuant to Colo. Rev. Stat. § 13-80-103.5(1)(a), any action on any note was barred by the statute of limitations and the lien securing any note extinguished by operation of Colo. Rev. Stat. § 38-39-207 on January 02, 2015, making any action by the Public Trustee in Sale Number 2016-0063 invalid, void, and unenforceable.

14.     In short, this case results from the late coming, out-of-state, third-party debt buyer, LSFP Master Participation Trust employing a Colorado debt collector to use the City and County of Denver, the Denver Public Trustee and Rule 120 to foreclose a lien, extinguished by operation of Colo. Rev. Stat. § 38-39-207, in order to collect a debt that is time-barred under the statute of limitations contained in Colo. Rev. Stat. § 13-80-103.5(1)(a) from Tatten, a disabled homeowner.

15.     LSF9 Master Participation Trust and debt collector, Janeway Law, knew or should have known that Tatten's note was time-barred and the lien securing Tatten's note extinguished under Colorado law.  Bank of America certainly did.

## II. JURISDICTION AND VENUE

16.     This action arises under the Constitution and laws of the United States of America and is brought pursuant to 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act of

3

1990, as amended, (ADA) 42 U.S.C. §§ 12131 *et seq.* and the Fair Debt Collection Practices Act (FDCPA), 42 U.S.C. §§ 1692 *et seq.* Jurisdiction is conferred pursuant to 28 U.S.C. § 1331.

17.     Venue is proper in the District Court of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events and omissions alleged herein occurred within this district and the property that is the subject of this action is situation within the district.

### III. PARTIES

18.     Plaintiff James Tatten is a citizen of the United States of America and is a resident of the State of Colorado. At all times relevant to the subject matter and claims of this litigation, Tatten was "disabled".

19.     Defendant City and County of Denver is a Colorado municipal corporation. The Denver Office of the Clerk and Recorder provides services to the citizens of the city and county of Denver. The Clerk and Recorder, by and through the Public Trustee, is responsible for the oversight, supervision, and administration of foreclosures. As part of that responsibility, the Public Trustee construes and applies state statutes pertaining to foreclosure. The Clerk and Recorder is responsible for oversight, training and supervision of certain employees, including Public Trustee employees. The City and County of Denver was, at all times relevant to the subject matter and claims of this litigation, the employer of the employees of the Denver Public Trustee. The City and County of Denver is a proper entity to be sued under 42 U.S.C. § 1983.

20.     At all times relevant to the subject matter and claims of this litigation, Defendant Debra Johnson was a citizen of the United States; a resident of the State of Colorado; and acting under color of state law, in her official capacity as Denver Clerk and Recorder.

21.     LSF9 Master Participation Trust is a third-party, debt collector located at 13801 Wireless Way, Oklahoma City, Oklahoma, 73134. At all times relevant to the subject matter and

claims of this litigation, Defendant LSF9 Master Participation Trust acted as a debt collector involving interstate commerce. LSF9 Master Participation Trust employed a debt collector, Janeway Law Firm, P.C. (Janeway Law), to collect a debt from Tatten.

**Order Violates the Constitution and Laws of the United States of America**

**IV. FACTS & ALLEGATIONS**

**A.    Traumatic Brain Injury**

22.    Tatten was physically assaulted outside the Denver Diner on November 07, 2008. Soon after the assault, Tatten was transported by emergency personnel to Denver Health Medical Center for emergency treatment.

23.    As a result of the assault, Tatten suffered severe, traumatic-brain injuries and was near death. After receiving treatment and stabilization at Denver Health Medical Center, Tatten was transported to Craig Rehabilitation Hospital for two months of inpatient and twelve months of outpatient brain-injury care and rehabilitation services.

24.    The United States Social Security Administration determined that Tatten's brain injury falls within its definition of "disability". According to the Social Security Administration, an individual meets its definition of disability and is, therefore entitled to benefits when they cannot do the work that they did before; they cannot adjust to other work because of the medical condition; and the disability has lasted or is expected to last for at least one year or to result in death.

25.    The Social Security Administration determined Tatten's date of disability onset to be November 07, 2008.

26.    The Social Security Administration determined Tatten's date of entitlement to benefits under Social Security Disability Insurance (SSDIA) to be May 2009.

27.     At all times relevant to this litigation, the City and County of Denver, Clerk and Recorder, Public Trustee employees and LSF9 Master Participation Trust knew or should have known that Tatten had suffered a severe, traumatic-brain injury and was disabled.

28.     In the Rule 120 hearing, on April 25, 2016, LSF9 Master Participation Trust argued "...in this case, Your Honor, for him to allege that he didn't have the cognitive ability to sign the loan modification, how could he ever rely on it?  I just – I don't think it is a genuine argument..." *See* Exhibit One, Partial Transcript, Page22, line 9 through line 12.

29.     In response to a question concerning the issue of competency, LSFP Master Participation Trust testified "Not to my knowledge, No.  I did not review every single pleading, Your Honor, but I did review the relevant ones, in my opinion, and I did not see that argument at all." *See* Exhibit One, Partial Transcript, page 22, line 18 through 24.

30.     In the Rule 120 hearing, on April 25, 2016, LSF9 Master Participation Trust's testimony contained misstatements and misrepresentations of material facts related to Tatten's disability and his capacity to contract on September 28, 2009.

31.     On April 22, 2016 and April 25, 2016, LSF9 knowingly and intentionally made misstatements and misrepresentations to distract and confuse Tatten in his presentation of his case.

32.     Tatten's brain injury and disability have been disclosed and described at all times relevant to the subject matter and claims of this litigation.

**B.     Request for Judicial ADA Accommodation**

33.     On March 20, 2016, Tatten sent an email to the Colorado Judicial Branch at melissa.barnes@judicial.state.co.us requesting an accommodation under the Americans with Disabilities Act.

34.   A copy of Tatten's email request appears below:

> Dear Melissa,
>
> I am a *pro se* Respondent/Defendant in District Court, Denver County, Colorado, Case Number 2016CV30555.
>
> A contested Rule 120 Hearing is scheduled for Friday, April 22, 2016 at 1:30 p.m., in Courtroom 2009.
>
> In November 2008, I suffered a severe, traumatic-brain injury just a few blocks from the City and County Building.
>
> As a result of my brain injury, I am cognitively disabled and need a reasonable accommodation(s) to access the courts.
>
> Please tell me what I need to do to call the court's attention to my disability and to request a reasonable accommodation(s).
>
> Thank you for your attention to this important request.
>
> With kind regards, I am
>
> Sincerely,
>
> Jim Tatten

35.   On March 21, 2016, Tatten received an email from kelly.boe@judicial.state.co.us, which states, "I have made the court aware of the issue.  If needs arise during the hearing, please let the judge know and he can make adjustments.  Thank you."

36.   On June 01, 2016, Tatten sent an email to kelly.boe@judicial.state.co.us to call the Judicial Branch's attention to his experience related to the Rule 120 hearing.

37.   A copy of Tatten's email to Ms. Boe appears below:

> Dear Kelly,
>
> In March, I requested an ADA accommodation related to a "non-judicial" Rule 120 hearing that was scheduled before Denver District Court Judge Hoffman on April 23, 2016.

My request was based on my cognitive disability and related limitations concerning "executive functions."

I have read a partial transcript of the two-day proceeding. *See:* Attachment

Throughout the two days of hearing, it was clear to me and others in the courtroom, that my request for "accommodation" had a prejudicial impact on the presentation of my case and the legal outcome.

A reading of the nineteen pages (19) pages of the transcript setting forth Judge Hoffman's "reference of findings and conclusions," together with a once (1) sentence court order authorizing the sale of my home, clearly indicates that Hoffman committed judicial error by making medical and legal determinations concerning my cognitive disability. *See:* Denver District Court Case Number 2016CV3055.

I now regret calling the Court's attention to my disability by requesting an ADA accommodation.

What steps do I need to take to address such an important legal issue?

With great disappointment, I am

Sincerely,

Jim Tatten

38.     On June 01, 2016, Tatten received an email from Kelly Boe, District

Administrator, Denver District and Juvenile Court.

39.     A copy of Ms. Boe's email to appears below:

Mr. Tatten

I am not an attorney and cannot give legal advice. As stated in the Judge Hoffman's order, you cannot appeal a R120 hearing.

There is a Colorado Foreclosure Hotline which may be able to provide some assistance.

The number is 1-877-601-4673 (HOPE).

They also provide some information on their website
http://www.coloradoforeclosurehotline.org/Home.aspx

Kelly Boe

40. On June 01, 2016, Tatten responded to Ms. Boe's email.

41. A copy of Tatten's email response to Ms. Boe appears below:

Dear Kelly,

Thank you for your prompt response.

I apologize for the confusing nature of my email.

My email was not a request for legal advice or guidance
concerning the April 25, 2016 Rule 120 Hearing.

In the spirit of the Americans with Disabilities Act, I wrote to
call your attention to my experience and my belief there is a real
need for information and education concerning the meaning of
"accommodation" related to individuals with "invisible"
disabilities.

Because of the lack of understanding, I do regret calling
attention to my cognitive disability.

With great disappointment, I am

Sincerely,

James P. Tatten

42. The partial transcript from the Rule 120 hearing shows and establishes that the

court's ORDER AUTHOURIZING SALE was issued in violation of the Constitution and laws of

the United States of America, including due process and equal protection.

**The Court Erred in Finding Capacity to Contract**

43.     The partial transcript from the Rule 120 hearing shows and establishes that the ORDER AUTHORZING SALE is based on findings and conclusions concerning Tatten's capacity to contract on a specific day, September 28, 2009.

44.     The partial transcript from the Rule 120 hearing shows and establishes that the court's ORDER AUTHORIZING SALE was issued in error based on the court's finding that Tatten had the capacity to contract on September 28, 2009 because he appeared to have the capacity to contract on April 25, 2016 – more than seven years after he suffered his severe, traumatic-brain injury.

45.     Finding that Tatten had the capacity to contract on September 28, 2009 because he appeared to have the capacity to contract on April 25, 2016 was, more importantly, prejudicial and discriminatory and in violation of the Constitution and laws of the United States of America.

46.     Finding that Tatten had the capacity to contract on September 28, 2009 because he appeared to have the capacity to contract on April 25, 2016 was in reckless disregard for the Constitution and laws of the United States of America, including Tatten's right to due process and equal protection.

47.     The District Court's comments, statements and findings concerning Tatten's brain injury, disability, and capacity to contract on September 28, 2009 were in conflict with Tatten's testimony and evidence before the court.

48.     The District Court's comments, statements and findings concerning Tatten's brain injury, disability, and capacity to contract establish that C.R.C.P. Rule 120, as applied to Tatten and his real property pursuant to the District Court's ORDER AUTHORIZING, constitutes a deprivation of Tatten's rights, privileges, or immunities secured by the Constitution and laws of the United States of America.

**C.   Findings & Conclusions**

49.   On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "So I'm not sure about this legal issue, but I am going to conclude with some hesitation, but I'm nevertheless conclude this Mr. Tatten does that the right to raise statute of limitations in these Rule 120 proceedings." *See* Exhibit One, Partial Transcript, page 28, line 24 and page 29, line 1 through 3.

50.   On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "What does matter is whether the loan modification agreement was effective and, if so, what effect it has on the statute of limitations. I find on somewhat conflicting evidence that the parties did enter into a binding modification agreement...." *See* Exhibit One, Partial Transcript, page 30, line 24 through 25 and page 31, line 1 through 3.

51.   On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "Another issue was raised this morning, I think, in Exhibit 10, which is, whether this loan modification agreement is unenforceable because Mr. Tatten was incompetent in the contractual sense at the time that he signed this agreement." *See* Exhibit One, Partial Transcript, page 34, line 3 through 25 line 7.

52.   On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "The burden of proof on this issue is on Mr. Tatten. He's the one that has to prove he suffered some kind of injury or cognitive problems so profound that it rendered him incompetent in the contractual sense. That is a high burden. Mr. Tatten has not shown, has not met that burden here today." *See* Exhibit One, Partial Transcript, page 34, line 9 through line 13.

53.   On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "Oh, you know what? Before I talk about his mental state, let me back up and reject Ms.

Berry's argument that his competence has been – that he's precluded by collateral estoppel from raising his competence here today. I don't think that's true." *See* Exhibit One, Partial Transcript, page 34, line 14 through line 18.

54.     On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "First of all, as Ms. Berry mentioned earlier Rule 120 proceedings have no conclusive effect…but we are talking about the enforceability of this agreement, which is not a claim, it's an issue." *See* Exhibit One, Partial Transcript, page 34, line 19 through line 25.

55.     On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "…Mr. Tatten's competence, contractual competence was not litigated in the federal case. I know that the loan modification agreement was litigated, but not his competence and proving a lack of contractual competence are two different things. It's a high burden, and I don't think he's met it." *See* Exhibit One, Partial Transcript, page 35, line 7 through line 15.

56.     On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "I've read Exhibit 10. I believe Mr. Tatten – even without Exhibit 10, I believe Mr. Tatten's testimony that he suffered a traumatic brain injury…about a year or less than a year before he signed this loan modification agreement. I don't know exactly what the circumstances were of that traumatic brain injury. I don't think there was any evidence in the record." *See* Exhibit One, Partial Transcript, page 35, line 16 through line 22.

57.     On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "Certainly, in this doctor's view, there's some cognitive issues serious enough that this doctors is recommending some probate action be taken." *See* Exhibit One, Partial Transcript, page 35, line 25 and page 36, line 1 through line 2.

58.     On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "I have no idea whether that serious situation continued through September 28, 2009, almost a year later when this loan modification agreement is signed.  There is really no evidence about what Mr. Tatten's medical condition was of that date.  He said, actually, in closing, he suffered some cognitive defects and still suffers some cognitive defects.  I accept him at his word." *See* Exhibit One, Partial Transcript, page 36, line 14 through line 20.

59.     On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "I'm not a neurologist or a cognitive neuroscientist.  There's lots of dimensions of cognitive ability.  I've already know that to lack contractual competence is a really difficult thing to prove." *See* Exhibit One, Partial Transcript, page 36, line 22 through line 25.

60.     On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "So Mr. Tatten has to prove that he couldn't appreciate the fact that this loan modification agreement, that it changed everything, virtually everything…I'm not satisfied that Mr. Tatten didn't understand that.  He clearly understands that today…His performance here was impressive for a pro se litigant….had Mr. Tatten not said things about his cognitive ability, there is no evidence from what I saw in this courtroom that he has any trouble understanding what I was asking him…." Those statements and related findings are discriminatory and prejudicial and in direct violation of the Constitution and laws of the United States of America, including due process and equal protections. *See* Exhibit One, Partial Transcript, page 37, line 3 through line 21.

61.     On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "… -- so it seems like his medical condition today in terms of his ability to understand things like a loan modification agreement are fully intact.  I – they may not have been in

November, two months after this this or a few days, I guess, a couple weeks after this incident gave his this traumatic brain injury, but I have no idea what they were in between them at the moment in question, which is a year later almost." Those statements and related findings are discriminatory and prejudicial and in direct violation of the Constitution and laws of the United States of America, including due process and equal protections. *See* Exhibit One, Partial Transcript, page 37, line 23 through line 25 and page 38, line 1 through line 5.

62.      On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "So given all that, I find that Mr. Tatten has not met his considerable burden of proving that he lacked contractual capacity to enter into the loan modification agreement." That statement and finding violates the Constitution and laws of the United States of America. *See* Exhibit One, Partial Transcript, page 38, line 6 through line 9.

63.      On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "As I've already mentioned, the loan modification agreement changes everything except the due date, the March 2034, 30 year due date. It increased the principal to include past penalties. It change the payment structure to be ten years of interest only starting on November 1st." *See* Exhibit One, Partial Transcript, page 39, line 9 through line 13.

64.      On April 25, 2016, the Denver District Court, in its findings and conclusions, stated, "The effect of this loan modification agreement is clear to me to create new promises." *See* Exhibit One, Partial Transcript, page 39, line 14 through line 15.

65.      The Denver District Court never mailed nor served Tatten with a copy of the one-page order authorizing sale issued on April 26, 2016.

**Public Trustee Auction Sale is Void**

**D.      Emergency Motion**

66.    On June 08, 2016, Tatten filed EMERGENCY MOTION TO ENJOIN OR
VACATE ORDER AUTHORIZING SALE with the Denver District Court.

67.    Upon filing, the Clerk of the Court directed Tatten to Courtroom 9, District Court
Judge Hoffman.

68.    Tatten's EMERGENCY MOTION TO ENJOIN OR VACATE ORDER
AUTHORIZING SALE, provides, in part, the following:

     a.    Tatten is a cognitively-disabled, *pro se* litigant;

     b.    LSF9 Master Participation Trust, a third-party debt buyer is seeking to
enforce an ORDER AUTHORIZING SALE issued by this Court…violates the Constitution of
the United States and due process;

     c.    Any sale at auction by the Office of the Public Trustee, City and County
of Denver, will be in violation of the Constitution of the United States of America; due process;
42 U.S.C. § 1983; Fair Debt Collection Practices Act; Title II of the Americans with Disabilities
Act; Colo. Rev. Stat. § 13-80-103.5(1)(a) and Colo. Rev. Stat. § 38-39-207;

     d.    In addition, the transcript shows and establishes that this Court committed
constitutional, statutory and judicial error by making findings of fact and conclusions in a "non-
judicial" hearing based on personal observations concerning my cognitive disability; and

     e.    Moreover, the transcript shows and establishes that this Court's findings
and conclusions are beyond the scope and legal authority of a so-called "non-judicial" Rule 120
hearing.

69.    A copy of the partial transcript of the Rule 120 hearing was attached to Tatten's
EMERGENCY MOTION TO ENJOIN OR VACATE ORDER AUTHORIZING SALE.

70.     After conducting a court hearing, on the record, the Denver District Court denied Tatten's emergency motion.

71.     On June 08, 2016, after the motion hearing, Tatten went to the office of the Public Trustee to deliver a copy of the emergency motion and to get information concerning the auction sale of his property scheduled for the next day, June 09, 2016.

**E.    Denver Public Trustee**

72.     On February 04, 2016, Tatten emailed Denver Public Trustee employee John Davies at john.davies@denvergov.org.

73.     Tatten's email to John Davies provides, in part, the following:

> Dear Josh,
>
> Please provide me with all the information related to Office of the Public Trustee Case Number 2016-0063.
>
> Also, please notify me of any future filings for Case Number 2016-0063.
>
> For your information, Janeway Law is attempting to wrongfully and unlawfully foreclose on a loan that is well beyond Colorado's applicable statute of limitations.  The alleged debt is not valid nor enforceable.  In other words, the Office of Public Trustee has no legal authority to move forward with the foreclosure process.
>
> Be advised, if the Office of the Public Trustee takes any further action not authorized by law, I will actively protect my property and constitutional rights by action in Federal Court.
>
> I have probable cause to believe that *any* filing submitted by Janeway Law is in violation of state and federal laws, both civil and criminal.
>
> The official and court records related to the alleged loan legally establish that Bank of America, Caliber Home Loans and their agent(s), Janeway Law are knowingly and intentionally committing a fraud on the Office of the Public Trustee.
>
> Since being released from Craig Rehabilitation hospital with a traumatic brain jury seven years ago, Bank of America and its

16

> representatives and its agents have used the loan modification
> and Colorado foreclosure laws to intimidate, harass and
> financially damage me, knowing I was cognitively disabled.
>
> Since about June 2105, Bank of America, Caliber Home
> Loans Inc. and Janeway Law have engaged in actions that are
> a threat to my health, safety and welfare.
>
> Please contact me as soon as possible at (720) 256-3686.
>
> With kind regards, I am
>
> Sincerely,
>
> Jim Tatten

74.     On February 05, 2016, Tatten emailed Denver Public Trustee employees Juan

Guzman at juan.guzman@denvergov.org and John Davies at john.davies@denvergov.org.

75.     A copy of Tatten's email to Mr. Guzman appears below:

> Dear Juan,
>
> Thank you for your time and attention to my questions and my
> request for information concerning Case Number 2016-0063.
>
> I will likely be in need of additional information should this
> case move forward.
>
> Please let me know if you have any questions or comments.
>
> Thanks again.
>
> With kind regards, I am
>
> Sincerely,
>
> Jim Tatten

76.     On February 06, 2016, Tatten emailed Roger Hudson, Office of the Attorney

General, Colorado.  Tatten copied Denver Public Trustee employees John Davies and Juan

Guzman on Tatten's email to Mr. Hudson.

77.     Tatten's email to Roger Hudson appears below:

Dear Roger,

Request:

With this email, I am requesting the Office of the Attorney General begin enforcement action against the following organizations and individuals:

- Bank of America;

- LSF9 Master Participation Trust;

- Caliber Home Loans;

- Janeway Law Firm; and

- David R. Doughty.

My request for enforcement, both civil and criminal, is made in the public interest.

Reason:

Relevant state and federal court documents and records establish that the named organizations and individuals have knowingly and intentionally engaged in coordinated and unlawful activities to collect an alleged debt that is void under state and federal law.

Additionally, seven years of relevant documents, business records and communications show and establish that the named organizations and individuals have knowingly and intentionally engaged in coordinated and unlawful activities to mislead, intimidate, and harass in violation of state and federal settlement agreements.

Moreover, I have probable cause to believe that court documents and court records, along with relevant business records and communications, establish that Bank of America, LSF9 Master Participation Trust, Caliber Home Loans, Janeway Law and David Doughty knowingly and intentionally committed fraud on the PUBLIC TRUSTEE OF DENVER COUNTY. (SEE: Denver Public Trustee File #2016-0063).

Closing:

If the Office of the Attorney General has a question or needs additional information, please contact me via email or telephone at any time.

> Thank you for your time and attention to this important email communication.
>
> With kind regards, I am
>
> Sincerely,
>
> Jim Tatten

78.     On February 11, 2016, Tatten sent an email to Denver Public Trustee employee Juan Guzman. Denver Public Trustee employee John Davies was copied on Tatten's email to Mr. Guzman.

79.     A copy of Tatten's email to Mr. Guzman appears below:

> Dear Juan,
>
> For the information of the Office of the Public Trustee, below are two statements I submitted today to the Federal Consumer Protection Bureau concerning Public Trustee File Number #2016-0063.
>
> As my complaints indicate, I am requesting the Consumer Financial Protection Bureau, Federal Trade Commission and the United States Department of Justice bring enforcement action, both civil and criminal, against Caliber Home Loans, Inc., Janeway Law Firm P.C., Lynn M. Janeway and David Doughty.
>
> With kind regards, I am
>
> Sincerely,
>
> Jim Tatten

80.     On March 18, 2016, Tatten sent an email to Denver Public Trustee employee Juan Guzman. Denver Public Trustee employee John Davies was copied on Tatten's email to Mr. Guzman.

81.     A copy of Tatten's email to Mr. Guzman appears below:

Dear Juan,

For the records of the Public Trustee, Denver County, I am attaching a copy of my Response To Notice Of Hearing On Motion For Order Authorizing Sale, filed on March 10, 2016, in Case Number 2016CV30555, District Court, Denver County, Colorado.

As my response indicates, LSF9's motion raises questions concerning the constitutionality of Colorado's "non-judicial" foreclosures and actions taken by the Public Trustee "under color of law".

With kind regards, I am

Sincerely,

Jim Tatten

82.    On June 01, 2016, Tatten hand-delivered Notice of Intent to Sue the City and County of Denver and Clerk and Recorder to the offices of Denver Mayor Hancock and Clerk and Recorder Debra Johnson.

83.    Tatten's notice of intent to sue the City and County of Denver and Denver Clerk and Recorder provides, in part, the following:

a.    The Clerk and Recorder's acts or omissions concerning Denver Foreclosure Number 2016-0063 are intentional, malicious, willful, wanton, and/or in reckless disregard for my established rights und the United States Constitution and in violation of due process;

b.    The Clerk and Recorder continues to deprive me of constitutionally protected rights by engaging in acts or omission, both civil and criminal, to enforce a debt that is time-barred under Colo. Rev. Stat. § 13-80-103.5(1)(a) and to foreclose the lien of a deed of trust that extinguished under Colo. Rev. Stat. § 38-39-207;

c.      The Clerk and Recorder's acts or omissions were and are the legal and proximate cause of my damages; and

d.      As a direct result of the Clerk and Recorder's acts or omissions, I have suffered actual physical, emotional, and economic injuries in an amount to be proven at trial.

84.      On June 07, 2016, LSF9 Master Participation Trust bid the sum of $ 570,819.45 in Public Trustee Foreclosure Sale Number 2016-0063 to be held on June 09, 2016.

85.      On June 08, 2016, Tatten hand-delivered a copy of EMERGENCY MOTION TO ENJOIN OR VACATE ORDER AUTHORIZING SALE to the Denver Public Trustee, which included Attachment One, a copy of the 43 page partial transcript of the Rule 120 hearing for Denver District Court Case Number 2016-CV—0355, *In the Matter of the Application of LSFP Master Participation Trust for an Order Authorizing the Public Trustee of Denver County Colorado, to Sell Certain Property Under a Power of Sale Contained in a Deed of Trust.*

86.      On and about June 08, 2016, the Public Trustee's website was being updated and/or receiving maintenance.

87.      On and about June 08, 2016, Tatten was not able to retrieve important information concerning the requirements, administration and oversight of the bids and auction sales schedule for June 09, 2016 via the Public Trustee's foreclosure website.

88.      On June 08, Tatten asked Public Trustee employees questions concerning the requirements, administration and oversight of bids and auction sales.

89.      On June 08, 2016, Denver Public Trustee Juan Gomez appeared and interrupted Tatten's discussion and directed Denver Public Trustee employees not to answer Tatten's questions nor provide public information to Tatten.

90.     On June 08, 2016, Denver Public Trustee employees, at the direction of Mr. Guzman, the employees did not answer Tatten's questions or provide information concerning the requirements, administration and oversight of the bid and auction sale of his home scheduled for Jun 09, 2016.

91.     On June 08, 2016, after directing other Public Trustee employees not to answer questions or provide Tatten with public information, employee Juan Guzman told Tatten, "We will continue with our statutory obligations."

92.     On June 09, 2016, the Denver Public Trustee conducted an auction of sale of Tatten's property at 8681 East 29th Avenue, Denver, Colorado 80238.

93.     Denver District Court ORDER AUTHORZING SALE in Case Number 2016CV30555 provides, in part, the following:

   a.     The Court finds there is a reasonable probability that the default or other circumstance alleged in the Motion for Order Authorizing Sale to justify invocation of the power of sale has occurred...and that the provisions of Rule 120 of the Colorado Rules of Civil Procedure have been complied with and that the Motion should be granted; and

   b.     It is, therefore, ordered that the Denver County Public Trustee is, pursuant to the provisions of that certain deed of trust ...executed...March 3, 2004 and recorded March 18, 2004...authorized to sell the property described as follows:  LOT 5, BLOCK 3, STAPLETON FILING NO. 5, CITY AND COUNT OF DENVER, STATE OF COLORAO. Purported Common Address:  8681 East 29th Avenue, Denver, CO. 80238.

**F.     Time Line**

94.     The last payment on the original note was made in December 2008 LSF9 Master Participation Trust employed the debt collector Janeway Law Firm, P.C. (Janeway Law) to collect a debt from Tatten. .

95.     The original note became due on January 01, 2009.

96.     A payment on the original note has not been made since December 2008.

97.     The original note, and all installment payments, was clearly and unequivocally accelerated and due.

98.     After January 01, 2009, no creditor, nor successor or assign, commenced any suit, claim, or counter-claim to enforce payment of the indebtedness or performance of the obligation secured by the lien within six years of the cause of action accruing.

99.     The acts or omissions of LSF9 Master Participation Trust, were the legal and proximate cause of the actual, physical, cognitive, severe emotional distress, economic and financial injuries Tatten has suffered for more than 89 months.

100.    The acts or omissions of LSFP Master Participation Trust were and are the legal and proximate cause of Tatten's damages over the past 89 months.

**G.      Debt Seller**

101.    On or about February 17, 2009, Countrywide Bank, FSB, sent Tatten, via U.S. mail, NOTICE OF ACCELERATION.

102.    Countrywide Bank's notice of acceleration provided, in part, the following:

a.      The loan is in serious default because the required payments have not been made;

b.     If the default is not cured on or before March 19, 2009, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time;

c.     Your loan is in default; and

d.     In the meantime, Countrywide will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise.

103.   At the direction and per the instructions of BAC Home Loans Servicing, LP, Tatten signed a BAC Home Loans loan-modification agreement on September 28, 2009.

104.   BAC Home Loans Servicing, LP, a subsidiary of Bank of American, N.A., knowingly mislead, tricked, forced and/or coerced the disabled Tatten into signing the loan modification on September 28, 2009.

105.   BAC Home Loans Servicing, LP, knew that on September 28, 2009, Tatten did not have the capacity to contract on an agreement that on April 25, 2015 the Denver District Court found "...changes everything...increased the principal to include past penalties...changed the pay structure...."

106.   BAC Home Loans Servicing, LP, knew that Tatten did not have the capacity to contract on, nor at any time before, after or near, September 28, 2009.

107.   BAC Home Loans Servicing, LP, specifically told Tatten that his home would be sold at a Public Trustee auction sale in October 2009 unless he signed and returned the loan modification agreement by September 29, 2009.

108.   BAC Home Loans Servicing, LP, knew that moving forward with foreclosure would force and/or coerce Tatten to sign the loan modification before its self-imposed deadline of September 29, 2009.

109.   BAC Home Loans Servicing, LP, knew that forcing and/or coercing Tatten to sign a modification agreement by September 29, 2009, would be to BAC Home Loans' financial and legal benefit.

110.   BAC Home Loans knew the loan-modification agreement signed by Tatten on September 28, 2009 was not legally binding nor enforceable.

111.   Tatten never received any notice from BAC Home Loans Servicing, LP, that the loan modification, dated September 28, 2009, was accepted.

112.   The loan modification became due on November 01, 2009.

113.   Tatten never made a payment on the loan modification.

114.   On or about November 09, 2009, BAC Home Loans Servicing, LP, sent a letter, via U.S. mail to Tatten stating, in part, the following:

    a.    IMPORTANT INFORMATION ABOUT YOUR LOAN;

    b.    We recently received your request for financial assistance;

    c.    We regret to inform you that there are no available workout options based on the financial information that was provided;

    d.    While we regret that we are unable to assist you currently, if your financial situation changes, please contact our office with the updated information; and

    e.    In the meantime, you will be required to make your monthly payment by the 1st of each month in accordance with your Note.

115.   Based on the BAC Home Loans Servicing, LP, letter, dated November 09, 2009, the loan modification, dated September 28, 2009, had been rejected and Tatten was required to make a payment on the original note by November 01, 2009.

116.   On or about November 10, 2009, BAC Home Loans Servicing, LP, sent a letter, via U.S. mail, to Tatten, stating, in part, the following:

    a.    Currently, your mortgage loan is delinquent;

    b.    It is imperative that you contact us immediately to discuss your mortgage with BAC Home Loans Servicing, LP, the servicer of your mortgage;

    c.    Past due: 5 days; and

    d.    Please be advised that Bank of America Home Loans is a debt collector, we are attempting to collect a debt, and any information Bank of America obtains will be used for that purpose.

117.   Based on the BAC Home Loans Servicing, LP, letter, dated November 10, 2009, together with the letter dated November 9th, the loan modification, dated September 28, 2009, BAC Home Loans rejected the modification and, consequently, Tatten was required to make payment on the original note by November 01, 2009 and Tatten missed that payment.

118.   On or about December 23, 2009, BAC Home Loans Servicing, LP, sent to Tatten, via U.S. mail, NOTICE OF INTENT TO ACCELERATE.  The notice of intent to accelerate provides, in part, the following:

    a.    The loan is in serious default because the required payments have not been made;

    b.    If the default is not cured on or before January 22, 2010, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time;

    c.    Your loan is in default; and

d.  In the meantime, BAC Home Loans Servicing, LP, will pursue all its right and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing.

119.  On June 05, 2015, Tatten sent an email to Jerome Dubrowski, Senior Vice President, Bank of America, at jerome.f.dubrowski@bankofamerica.com.

120.  A copy of Tatten's email to Mr. Dubrowski appears below.

> Dear Jerome,
>
> Would you provide me with contact information for a Bank of America representative who can help me resolve my ongoing home-loan dispute with Bank of America?
>
> On August 21, 2014, Brian Moynihan stated, "We believe this settlement, which resolves significant remaining mortgage-related exposures, is in the best interests of our shareholders, and allows us to continue to focus on the future."
>
> Within the past week, Bank of America has sent a letter, several contact requests and a process-server to my home. Despite our unsettled dispute, Bank of America continues to expose itself to new claims and new liabilities for new wrongs by its collections and home retention divisions. It is my hope that we can avoid Bank of America wrongfully and unlawfully attempting to collect on my home loan.
>
> Thank you for your attention to my important request.
>
> With kind regards, I am
>
> Sincerely,
>
> Jim Tatten

121.  On June 08, 2015, Tatten sent a follow-up email to Mr. Dubrowski, Bank of America.

122.  A copy of Tatten's email to Mr. Dubrowski appears below:

Dear Jerome,

This email is a follow-up to my email from last Friday.

Again, would you provide me with a Bank of America contact who can help me resolve my continuing problems with Bank of America and its handling of my account?

Since my email, I have had *several* contacts from Bank of America.

Early this morning a Bank of America employee called and read the following "notations" entered to my account on March 07, 2014:

- You called Bank of America because you received a letter from Bank of America.
- You called Bank of America because you were concerned that your house was in foreclosure.

Bank of America's notation and record is not true; it is false and may be criminal.

Be advised that Bank of America continues to ignore and knowingly violate state and federal laws. Be advised that Bank of America continues to expose itself to new claims and new liabilities for wrongs by Bank of America. This is not a new Bank of America case - but *now* refreshes old and offers new legal issues and problems. *See*: Tatten v. Bank of America, et. al., United States Supreme Court, 14-6892.

Should you have questions or need additional information, please contact me at any time at (720) 256-3686.

Your attention and assistance with providing a qualified Bank of America contact will be appreciated.

With kind regards, I am

Sincerely,

Jim Tatten

123.   On August 20, 2015, Tatten sent an email to Jerome Dubrowski, Bank of America.

124.   A copy of Tatten's email to Mr. Dubrowski appears below:

Dear Jerry,

I directed a simple request to you more than two months ago.

As Senior Vice President, Corporate Communications, I am providing you with the following information:

- If Bank of America takes any action related to my real property, I will immediately request relief and damages in state or federal court;

- If Bank of America takes any action related to my real property, I will immediately call on state and federal legislators, regulators and executives to aggressively enforce existing laws and agreements; and

- If Bank of America takes any action related to my real property, I will immediately call on lawmakers, executives, agencies and other organizations to support state and federal legislation to stop Bank of America actions and practices.

As you should know, a growing number of state and federal lawmakers, candidates for office, news outlets and social media have an interest in discussing the "underbelly" of the financial markets, including debt collectors like Bank of America Home Loans.  I am committed to encouraging and shaping such discussions.

In or about November 2008, my family notified your employer that I was hospitalized with a severe, traumatic-brain injury.  With that knowledge, your representatives and your fellow employees seized on a financial opportunity to mislead, harass and intimidate me and my family.  Based on that Bank of America "customer" experience, I suspect that our service men and women needing wheelchairs or prosthetics will be banned from the 2015 Chicago Marathon.

Jerry, in short, please tell your Chairman & Chief Executive Officer to stop misstating facts; stop misstating laws; and stop mistreating the cognitively disabled.

As an advisor to many state and national leaders, I say "shame on Moynihan, his senior executives and Bank of America shareholders".

With great disappointment, I am

Sincerely,

Jim Tatten

125.    On September 24, 2015, Tatten sent an email to Jerry Dubrowski, Bank of America.

126.    Tatten's email to Mr. Dubrowski appears below:

> Dear Jerry,
>
> In response to Bank of America's recent communications, including a letter from Janeway Law and your employee's statement that "your account is in foreclosure, but a sale date has not been scheduled", I have filed a formal complaint against Bank of America with the Consumer Financial Protection Bureau.
>
> See CFPB case number: 150924-002343
>
> In addition to my CFPB complaint, today I asked United States Senators Michael Bennet and Cory Gardner to assist me in correcting Bank of America's wrongs by sponsoring legislation to establish civil and criminal penalties for certain business practices employed by certain financial institutions, including Bank of America.
>
> With great disappointment, I am
>
> Sincerely,
>
> Jim Tatten

127.    On September 24, 2015, Tatten filed a formal complaint against Bank of America with the Consumer Financial Protection Bureau.  CFPB Case number 150924-002343 alleges and provides, in part, the following:

a.       In or about November 2008, my family notified Countrywide/Bank of America that I was the victim of a violent assault and that I was hospitalized with a severe, traumatic-brain injury and cognitively disabled;

b.     Soon after learning of my disability, Countrywide/Bank of America began using foreclosure to mislead, harass, and intimidate me;

c.     Since June 2015, I have received a number of loan-related communication from Bank of America, including letters, statements and door hangers;

d.     A reasonable review of Bank of America's recent communications shows and establishes that Bank of America continues to knowingly and intentionally use the threat of foreclosure to mislead and coerce me into making a payment or entering into a loan modification agreement; and

e.     Over the past seven years, Bank of America's wrongful and unlawful statements, practices and acts have caused personal, professional and financial damage to me, including harm to my health, safety and welfare.

128.   On September 29, 2015, Bank of America, N.A., sold Tatten's home loan account to LSF9 Master Participation Trust.

129.   On October 01, 2015, Bank of America responded to CFPB case number 150924-002343. Bank of America's response provides, in part, the following:

a.     After reviewing your request we are unable to find a change in your situation, or unaddressed concerns;

b.     Given this circumstance, we have closed your request; and

c.     As of the date of this letter, your loan has not been sent to our foreclosure department.

130.   On October 20, 2015, Tatten replied to the Response submitted by Bank of America in case number 150924-002343. Tatten's reply alleges and provides, in part, the following:

a.      Bank of America continues to knowingly and intentionally violate the FDCPA;

b.      Bank of America unlawful conduct has caused me financial, professional and personal harm, including damage to my health, safety and welfare;

c.      For more than six years, Bank of America has engaged in abusive, harassing, deceptive, unfair and discriminatory debt-collection practices concerning my financial account(s), including making false and fraudulent statements concerning terms, conditions and status;

d.      Soon after learning of my traumatic-brain injury, Bank of America and its attorneys seized on the "invisible" opportunity to knowingly mislead, deceive, harass and abuse its cognitively-disabled customer, for financial gain;

e.      To this day, Bank of America continues to knowingly and intentionally engage in abusive, harassing, deceptive, unfair and discriminatory business practices in its effort to wrongfully collect and/or foreclose on my time-barred account.

## H.     Debt Buyer

131.    On October 30, 2015, Tatten received, via U.S. mail, NOTICE OF SALE OF OWENERSHIP OF MORTGAGE LOAN at 8681 East 29th Avenue, Denver, Colorado, 80238.

132.    The notice of sale of ownership, dated October 23, 2015, provides, in part, the following:

a.      The purpose of this letter is to inform you that your mortgage loan (described below) has been sold to LSF9 Master Participation Trust (herein after "Us", "We", "Our", or "Lender");

b.      By law we are required to inform you that your loan has been sold to us; and

c.      Date Ownership Transferred to US: September 29, 2015.

133.    On February 18, 2016, LSF9 Master Participation Trust officially commenced the foreclosure on Tatten's property by filing a motion for order authorizing a Public Trustee sale.

134.    By filing a motion for order, LSF9 Master Participation Trust used foreclosure and C.R.C.P. Rule 120 to collect a time-barred debt and foreclose an extinguished lien.

135.    LSF9 Master Participation Trust's motion for order was filed 7 years, 1 month and 17 days after the promissory note became due on January 01, 2009.

136.    The facts, circumstances, records, documents, and a partial transcript from the Rule 120 hearing establish that LSF9 Master Participation Trust is a debt collector and sent a debt collection letter(s) to Tatten without having meaningful attorney review.

137.    The facts, circumstances, records, documents, and a partial transcript from the Rule 120 hearing establish that LSF9 Master Participation Trust is a debt collector and signed, filed, served and commenced a Public Trustee and/or state-court proceeding against Tatten without substantial attorney review.

138.    On March 10, 2016, Tatten filed with the Denver District Court RESPONSE TO NOTICE OF HEARING ON MOTION FOR ORDER AUTHORIZING SALE.

139.    Tatten's response to the notice of hearing provides, in part, the following:

a.      Here, the lien created by the deed of trust extinguish at the same time that the right to commence a suit to enforce payment of the indebtedness or performance of the obligation was barred by the applicable statute of limitations of this state;

33

b.       Here, the right to commence suit to enforce payment or performance

ended on January 02, 2015;

c.       It is clear that, under Colorado law, because Mortgage Electronic

Registrations Systems, Inc., as nominee for American Mortgage Network, Inc., and its

successors and assigns, failed to sue to enforce the promissory note before January 02, 2015 –

any action on the note is barred – the statute of limitations has run – and the lien created by the

deed of trust is extinguished; and

d.       By its plain terms, the applicable statute of limitations does not merely

affect LSF9's ability to enforce the lien – it destroys the lien.

## V. STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**42 U.S.C. § 1983**
**14th Amendment - Violation of Due Process**
**(Against All Defendants)**

140.    Tatten re-alleges each and every allegation contained in Paragraphs 1 through 139

as if fully set forth herein.

141.    Defendant Debra Johnson was acting under color of state law in her capacity as

Clerk and Recorder, City and County of Denver, at all times relevant to this claim.

142.    Under 42 U.S.C. § 1983, every person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

proceeding for redress...."

143.   At all times relevant to the subject matter and claims of this litigation, Tatten had clearly established rights under the Fourteenth Amendment to the Constitution of the United States, including the right to a Rule 120 hearing that was free from prejudice and discrimination.

144.   The acts or omissions alleged in this complaint were committed under C.R.C.P. Rule 120 and the statutory power or authority asserted by Denver Public Trustee, Debra Johnson, in Foreclosure Case Number 2016-0063.

145.   The acts or omissions alleged in this complaint were committed under C.R.C.P. Rule 120 and the statutory power or authority asserted by the Denver Public Trustee, Debra Johnson, to cause the taking of Tatten's property in violation of the Constitutions and laws of the United States of America and due process and equal protection.

146.   Any reasonable elected official and public trustee knew or should have known of LSF9 Master Participation Trust employed the debt collector Janeway Law Firm, P.C. (Janeway Law) to collect a debt from Tatten.  Tatten's clearly established rights under the Constitution and laws of the United States of America.

147.   Defendant Johnson knew or should have known she was acting under color of law in Foreclosure Case Number 2016-0063.

148.   Defendant Johnson knew that Tatten challenged the power of sale in Foreclosure Case Number 2016-0063.

149.   Defendant Johnson also knew or should have known that Tatten challenged the "verified" documents in Foreclosure Case Number 2016-0063.

150.   Defendant Johnson knew or should have known Tatten's claim that Foreclosure Case Number 2016-0063 involved a third-party debt buyer, LSF9 Master Participation Trust, seeking to foreclose a lien extinguished by operation of Colo. Rev. Stat. § 38-39-207.

151.    Defendant Johnson knew or should have known Tatten's claim that Foreclosure Case Number 2016-0063 involved a third-party debt buyer, LSF9 Master Participation Trust, seeking to invoke the power of sale on a note that was time-barred under Colo. Rev. Stat. § 13-80-103.5.

152.    Defendant Johnson knew or should have known that Foreclosure Case Number 2016-0063 was time-barred under the statute of limitations according to the language contained in Colo. Rev. Stat. § 13-80-103.5 and, consequently, the lien securing the note extinguished by operation of Colo. Rev. Stat. § 38-39-207.

153.    Defendant Johnson knew or should have known that Tatten was disabled.

154.    Defendant Johnson knew or should have known that employees of the Denver Public Trustee refused to provide Tatten with important public information concerning auction sales, including the auction sale of his home scheduled for the next day, June 09, 2016.

155.    Defendant Johnson knew or should have known that any act or omission by the Denver Public Trustee in Foreclosure Case Number 2016-0063 was void.

156.    Despite that knowledge, Defendant Johnson violated Tatten's constitutional rights through acts or omissions pursuant to customs, policies or practices of the City and County of Denver and the Public Trustee, which encourage, condone, tolerate and/or ratify the unlawful use of Rule 120 to collect a time-barred debt and to deprive Tatten of his property.

157.    Violation of Tatten's right to due process, equal protection, and other harm was a foreseeable consequence of Defendant Johnson's acts or omissions.

158.    The acts or omissions of each Defendant, including policy, procedure, custom, and/or practices described herein, were the legal and proximate cause of the Tatten's damages.

159.    As a direct result of Defendant Johnson's acts or omissions, described above, Tatten has suffered actual physical, cognitive, severe-emotional distress and economic injuries in an amount to be proven at trial.

160.    For more than seven years, Tatten has been and continues to be damages by Defendant Johnson's use of C.R.C.P. Rule 120 with reckless disregard for Tatten and his rights under the Constitution and laws of the United States of America.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983
### 14th Amendment - Violation of Equal Protection
### (Against All Defendants)

161.    Tatten re-alleges each and every allegation contained in Paragraphs 1 through 139 as if set forth herein.

162.    Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

163.    At all times relevant to the subject matter and claims of this litigation, Tatten had clearly established rights under the Fourteenth Amendment to the Constitution of the United States, including the right to a Rule 120 hearing that was free from prejudice and discrimination.

164.    The acts or omissions alleged in this complaint were committed under C.R.C.P. Rule 120 and the statutory power or authority asserted by Denver Public Trustee, Debra Johnson, in Foreclosure Case Number 2016-0063.

165.    The acts or omissions alleged in this complaint were committed under C.R.C.P. Rule 120 and the statutory power or authority asserted by the Denver Public Trustee, Debra Johnson, to cause the taking of Tatten's property in violation of the Constitutions and laws of the United States of America and due process and equal protection.

166.    Any reasonable elected official and public trustee knew or should have known of Tatten's clearly established rights under the Constitution and laws of the United States of America.

167.    Defendant Johnson knew or should have known she was acting under color of law in Foreclosure Case Number 2016-0063.

168.    Defendant Johnson knew or should have known that Tatten challenged the power of sale in Foreclosure Case Number 2016-0063.

169.    Defendant Johnson also knew or should have known that Tatten challenged the "verified" documents in Foreclosure Case Number 2016-0063.

170.    Defendant Johnson knew or should have known that Foreclosure Case Number 2016-0063 involved a third-party debt buyer, LSF9 Master Participation Trust, seeking to foreclose a lien extinguished by operation of Colo. Rev. Stat. § 38-39-207.

171.    Defendant Johnson knew or should have known that Foreclosure Case Number 2016-0063 involved a third-party debt buyer, LSF9 Master Participation Trust, seeking to invoke the power of sale on a note that was time-barred under Colo. Rev. Stat. § 13-80-103.5.

172.    Defendant Johnson knew or should have known that Foreclosure Case Number 2016-0063 was time-barred under the statute of limitations according to the language contained in Colo. Rev. Stat. § 13-80-103.5 and, consequently, the lien securing the note extinguished by operation of Colo. Rev. Stat. § 38-39-207.

173.    Defendant Johnson knew or should have known that Tatten was disabled.

174.    Defendant Johnson knew or should have known that employees of the Denver Public Trustee refused to provide Tatten with important public information concerning auction sales, including the auction sale of his home scheduled for the next day, June 09, 2016.

175.    Defendant Johnson knew or should have known that any act or omission by the Denver Public Trustee in Foreclosure Case Number 2016-0063 was void.

176.    Despite that knowledge, Defendant Johnson violated Tatten's constitutional rights through acts or omissions pursuant to customs, policies or practices of the City and County of Denver and the Public Trustee, which encourage, condone, tolerate and/or ratify the unlawful use of Rule 120 to collect a time-barred debt and to deprive Tatten of his property.

177.    Violation of Tatten's right to due process, equal protection, and other harm was a foreseeable consequence of Defendant Johnson's acts or omissions.

178.    The acts or omissions of each Defendant, including policy, procedure, custom, and/or practices described herein, were the legal and proximate cause of the Tatten's damages.

179.    As a direct result of Defendant Johnson's acts or omissions, described above, Tatten has suffered actual physical, cognitive, severe-emotional distress and economic injuries in an amount to be proven at trial.

180.    For more than seven years, Tatten has been and continues to be damages by Defendant Johnson's use of C.R.C.P. Rule 120 with reckless disregard for Tatten and his rights under the Constitution and laws of the United States of America.

### THIRD CLAIM FOR RELIEF

**42 U.S.C. § 1983**
**14th Amendment – Unconstitutional Policies & Practices**
**(Against City and County of Denver and Defendant Debra Johnson)**

181.   Tatten re-alleges each and every allegation contained in Paragraphs 1 through 139 as if fully set forth herein.

182.   Denver failed to properly instruct, train, supervise, guide, and/or monitor its employees with respect to communicating with the public, including men and women with a disability.

183.   Denver failed to properly instruct, train, supervise, guide, and/or monitor Public Trustee employees with respect to Colorado laws governing foreclosure and C.R.C.P. Rule 120.

184.   Denver failed to properly instruct, train, supervise, guide, and/or monitor Public Trustee employees the Constitution and laws of the United States of America concerning due process and equal protection.

185.   Denver failed to properly instruct, train, supervise, guide, and/or monitor Public Trustee employees with respect to communicating with individuals and homeowners, including individuals and homeowners with a disability.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 12131 *et seq.*
### Disability-Based Discrimination In Violation of Title II of the Americans with Disabilities Act
### (City and County Denver and Defendant Debra Johnson )

186.   Tatten re-alleges each and every allegation contained in Paragraphs 1 through 139 as if fully set forth herein.

187.   Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by and such entity." 42 U.S.C. 12132.

188.     The regulations implementing Title II of the ADA require that public entities

"take appropriate steps to ensure that communications with applicants, participants, [and]

members of the public…with disabilities are as effective as communications with others." 28

C.F.R. 35.160(a)(1).

189.     The regulations implementing Title II of the ADA further require that public

entities avoid unnecessary policies, practices, criteria or methods of administration that have the

effect or tendency of excluding or discriminating against persons with disabilities.  28 C.F.R. §

35.130(b)(3), (8).

190.     The ADA applies to the City and County of Denver and the Denver Public

Trustee because both are a "public entity" pursuant to Title II of the ADA, which prohibits

discrimination against qualified individuals with disabilities on the basis of a disability in the

"services, programs, or activities of a public entity." 42 U.S.C. § 12132

191.     Providing public information to individuals concerning foreclosure is a service,

program, or activity of the Denver Clerk and Recorder.

192.     The Office of the Denver Clerk and Recorder failed to communicate effectively

with Tatten concerning foreclosure and the actions of the Denver Public Trustee.

193.     Defendant Debra Johnson has failed to establish and enforce sufficient policies

and training regarding foreclosures involving a disabled individual and/or how to appropriately

interact with individuals with "invisible" disabilities, including cognitive disabilities.

194.     By planning, adopting, operating, and maintaining foreclosures and a records

system that are not accessible to Tatten, the Clerk and recorder violated and continues to violate

Title II of the ADA.

## FIFTH CLAIM FOR RELIEF

**42 U.S.C. § 1692 *et seq.***
**Violation of the Fair Debt Collection Practices Act**
**(Against All Defendants )**

195.    Tatten re-alleges each and every allegation contained in Paragraphs 1 through 139 as if fully set forth herein.

196.    The Fair Debt Collection Practices Act (FDCPA) prohibits a broad range of false, misleading, or overreaching tactics in connection with the collection of a debt.  15 U.S.C. § 1692 *et seq.*

197.    Under the FDCPA, a debt collector cannot engage in any conduct which is to harass, oppress or abuse. 15 U.S.C. § 1692d.

198.    Under the FDCPA, a debt collector cannot use any false, deceptive, or misleading representation or mean in connection with the collection of any debt.  15 U.S.C. § 1692e.

199.    Under the FDCPA, it is false and misleading for an attorney to send a debt collection letter without having meaningful reviewed the case.

200.    Signing, filing, serving and/or commencing a state-court proceeding without substantial attorney review is a violation of the FDCPA.

201.    Tatten is a "consumer" under 15 U.S.C. § 1692a(3) or § 1692a(5).

202.    The debt at issue is a "consumer debt" under the FDCPA.  15 U.S.C. § 1692a(5).

203.    Each Defendant falls within the definition of "debt collector" under the FDCPA. 15 U.S.C. § 1692a(3) or § 1692a(5).

204.    The acts and/or omissions of each Defendant, described herein, were in violation of 15 U.S.C. § 1692c; 15 U.S.C. § 1692d; 15 U.S.C. § 1692f; and 15 U.S.C. § 1692g.

205. For more than 89 months, the acts and/or omissions of the Defendants, described herein, were in violation of 15 U.S.C. § 1692c; 15 U.S.C. § 1692d; 15 U.S.C. § 1692f; and 15 U.S.C. § 1692g.

206. The acts or omissions of each Defendant, described herein, were the legal and proximate cause of the Tatten's damages.

207. As a direct result of each Defendant's acts or omissions, described above, Tatten has suffered actual physical, cognitive, emotional and economic injuries in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress
### (Against All Defendants )

208. Tatten re-alleges each and every allegation contained in Paragraphs 1 through 139 as if fully set forth herein.

209. The acts or omissions of each Defendant, described herein, were intentional or reckless and extreme and outrageous.

210. The acts or omissions of each Defendant, described herein, were the legal and proximate cause of severe emotional distress for Tatten.

211. The acts or omissions of each Defendant, described herein, were the legal and proximate cause of the Tatten's damages.

212. As a direct result of each Defendant's acts or omissions, described herein, Tatten has suffered actual physical, cognitive, severe-emotional distress and economic injuries in an amount to be proven at trial.

213. As a direct result of each Defendant's acts or omissions, described herein, Tatten has suffered damage and injuries that constitute a threat to his health, safety and welfare.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Tatten respectfully requests this Court enter judgment in his favor and against each of the Defendants and award him all relief allowed by law, including but not limited to the following:

(a)     All appropriate relief at law and equity;

(b)     Declaratory relief and other appropriate equitable relief;

(c)     Economic losses on all claims as allowed by law;

(d)     Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(e)     Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(f)     Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(g)     Pre and post-judgment interest at the appropriate lawful rate; and

(h)     Any further relief allowed by law or equity that this court deems proper and just.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 23nd day of June 2016, by

*James T. Tatten*

James P. Tatten
8681 East 29th Avenue
Denver, Colorado 80238
(720) 256-3686
jimtatten@legislativebasecamp.com

*pro se Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of June 2016, I directed Mr. Thane Benedict to hand-deliver a copy of the foregoing SUMMONS and COMPLAINT AND JURY DEMAND to the Defendant City and County of Denver at:

> The Honorable Michael B. Hancock
> Office of the Mayor
> 1437 Bannock Street, Room 350
> Denver, Colorado 80202.

I hereby certify that on the 23rd day of June 2016, I directed Mr. Thane Benedict to hand-deliver a copy of the foregoing SUMMONS and COMPLAINT AND JURY DEMAND to Defendant Debra Johnson at:

> The Honorable Debra Johnson
> Office of the Clerk and Recorder / Public Trustee
> 201 W. Colfax Avenue, Dept. 101
> Denver, Colorado 80202

I hereby certify that on the 23rd of June 2016, I directed Mr. Thane Benedict to hand-deliver a copy of the foregoing SUMMONS and COMPLAINT AND JURY DEMAND to Janeway Law Firm, P.C., attorneys for the Defendant LSF9 Master Participation Trust at:

> Janeway Law Firm, P.C.
> 9800 S. Meridian Blvd., Suite 400
> Englewood, CO 80112

Respectfully submitted, by:

*James P. Tatten*

_____

James P. Tatten
Plaintiff