**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-01603-RBJ-NYW

JAMES P. TATTEN,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, THE,
DEBRA JOHNSON, and
LSF9 MASTER PARTICIPATION TRUST,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Nina Y. Wang

This matter comes before the court on three pending motions:

(1)     Defendants City and County of Denver and Debra Johnson's (collectively, "City Defendants") Motion to Dismiss [#4, filed July 14, 2016];

(2)     Defendant LSF9 Master Participation Trust's ("LSF9") Motion to Dismiss [#34, filed November 7, 2016]; and

(3)     Plaintiff James P. Tatten's ("Plaintiff" or "Mr. Tatten") Motion for Leave to File First Amended Complaint and Jury Demand (the "Motion to Amend") [#53, January 11, 2017].

The undersigned Magistrate Judge considers the pending motions pursuant to 28 U.S.C. § 636(b)(1), the Order Referring Case dated August 8, 2016 [#23], and the memoranda dated August 8, 2016 [#24], November 8, 2016 [#38], and January 12, 2016 [#54].   This court

concludes that oral argument would not materially assist in the resolution of these matters. Accordingly, upon careful review of the Parties' briefing, the applicable case law, and the entire case file, this court respectfully RECOMMENDS that the City Defendants and LSF9's Motions to Dismiss be GRANTED and Plaintiff's Motion to Amend be DENIED.

## FACTUAL BACKGROUND

Mr. Tatten initiated this action by filing his *pro se* Complaint on June 23, 2016.  [#1]. The Complaint levies several claims against the City Defendants and LSF9 stemming from the foreclosure, and related proceedings, of the property located at 8681 East 29th Avenue, Denver, Colorado 80238 (the "Property").  *See* [*id.* at ¶¶ 7–10].  The following facts are relevant to the pending motions.

On or about March 3, 2004, Mr. Tatten signed a thirty-year adjustable rate note (the "Note") for approximately $406,000, secured by a deed of trust on the Property.  *See* [#1-1 at 25].  It appears that Bank of America issued the Note and that BAC Home Loans Servicing, LP ("BAC") serviced the Note.  [#1 at ¶¶ 116, 127b.].  However, Mr. Tatten made his last payment on the Note in approximately December 2008, making the Note due on January 1, 2009.  *See* [#1 at ¶¶ 94–95].  At around this same time, Plaintiff suffered a traumatic brain injury that required two months of inpatient rehabilitation at Craig Rehabilitation Hospital and an additional twelve months of outpatient brain-injury care and rehabilitation services.  [*Id.* at ¶¶ 22–23].  The Social Security Administration concluded that Mr. Tatten's brain injury satisfied the definition of "disability" under the Social Security Act, with a disability onset date of November 7, 2008.  [*Id.* at ¶¶ 24–25].

Plaintiff alleges that his family informed Bank of America of his brain injury and cognitive disability; however, soon after, Bank of America began "using foreclosure to mislead,

harass, and intimidate [him]."  [*Id.* at ¶ 127a.–b.].  For example, following Plaintiff's traumatic brain injury, two foreclosure proceedings on the Property were filed in Denver District Court. *See* [#1-1 at 26–27].  First, on or about August 4, 2009, Countrywide and/or Bank of America initiated a foreclosure proceeding in case No. 09CV75799.  *See* [*id.* at 26].  However, Bank of America dismissed its motion for an Order Authorizing Sale ("OAS") after BAC directed Plaintiff to sign a loan modification agreement on September 28, 2009.  [#1 at ¶ 104; #1-1 at 26–27].

Though not entirely clear, it appears Plaintiff made no payments on the loan modification agreement [#1 at ¶¶ 111–117], because on or about October 28, 2011, Bank of America initiated a second foreclosure proceeding in case No. 11CV7484.  [#1-1 at 27].  The Denver District Court granted Bank of America's OAS on January 20, 2012.  [*Id.*].  However, Mr. Tatten challenged the OAS in state court, Bank of America removed the action to federal court, and the United States District Court for the District of Colorado dismissed Plaintiff's complaint, which the Tenth Circuit affirmed on appeal.  *See* [*id.*]; *see also Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1044 (D. Colo. 2012), *aff'd*, 562 F. App'x 718 (10th Cir. 2014).  Because of Mr. Tatten's lawsuit, Bank of America withdrew without prejudice the second foreclosure action on January 23, 2013.  [#1-1 at 28].

On October 30, 2015, Mr. Tatten received a "NOTICE OF SALE OF OWNERSHIP OF MORTGAGE LOAN" from LSF9.  [#1 at ¶ 131].  The notice informed Plaintiff that Bank of America sold Plaintiff's Note on the Property to LSF9 on September 29, 2015.  [*Id.* at ¶¶ 128, 132].  On January 28, 2016, LSF9 filed a Notice of Election and Demand for Sale with the Public Trustee to foreclose on the Property.  *See* [#55-2].  On February 18, 2016, LSF9 filed a motion for an OAS with the Denver District Court in case No. 16CV30555—marking the third

foreclosure action on the Property.  [#1 at ¶¶ 1, 133].  During the months of February and March 2016, Mr. Tatten emailed two employees of the Public Trustee's office, requesting information regarding the third foreclosure action.  [*Id.* at ¶¶ 72–75, 78–81].  Then, in March 2016, Mr. Tatten filed a response to the motion for an OAS, arguing that the six-year statute of limitations had run on the Note thereby barring LSF9's foreclosure action.  [*Id.* at ¶¶ 138–139].

The Denver District Court held contested Rule 120 hearings on April 22 and 25, 2016. [*Id.* at ¶ 31].  Prior to the hearings, Mr. Tatten contacted the Denver District Court to alert the judge of his cognitive disabilities, and a court representative responded that she informed the judge and that should he need any assistance during the hearing, the court would make necessary accommodations.  *See* [*id.* at ¶¶ 33–35].  At the close of the Rule 120 hearing on April 25, 2016, the Denver District Court concluded, *inter alia*, that the statute of limitations did not bar LSF9's foreclosure action, that Plaintiff had the capacity to sign the loan modification agreement in September 2009, and that there was a reasonable probability that Plaintiff defaulted on the Note. *See* [#1 at ¶¶ 49–65, 92–93; #1-1].  The judge then issued an OAS, and the Public Trustee Sale of the Property was set for June 9, 2016.[1]  [#1 at ¶¶ 92–93; #1-1].

On June 1, 2016, Plaintiff alleges that he hand-delivered his "Notice of Intent to Sue the City and County of Denver and Clerk and Recorder" to the offices of Denver Mayor Michael Hancock and Debra Johnson, the Denver City and County Public Trustee.  [*Id.* at ¶ 82].  This notice stated that he intended to sue the City Defendants because their actions relating to the foreclosure proceedings violated his constitutional rights and were the cause of his damages.  [*Id.* at ¶ 83].  A week later, on June 8, 2016, Mr. Tatten filed an "EMERGENCY MOTION TO ENJOIN OR VACATE ORDER AUTHORIZING SALE" (the "Emergency Motion to Enjoin")

---

[1] Mr. Tatten challenges the OAS on numerous grounds.  *See e.g.*, [#1 at 9–14].

with the Denver District Court. [*Id.* at ¶ 66]. The Emergency Motion to Enjoin argued that LSF9's OAS was void and unenforceable, because it violated: (1) the United States Constitution; (2) Mr. Tatten's due process rights; (3) Mr. Tatten's rights under 42 U.S.C. § 1983; (4) the Fair Debt Collection Practices Act ("FDCPA"); (5) the six-year statute of limitations for actions on promissory notes under Colo. Rev. Stat. § 13–80–103.5(1)(a); and (6) Colo. Rev. Stat. § 38–39–207, which states that any lien extinguishes upon the expiration of any statute of limitations to commence any action on the instrument creating the lien. *See* [*id.* at ¶ 68c.]. In addition, Plaintiff argued that the judge in the Rule 120 proceeding made findings of law and fact beyond the scope of the proceeding and that the proceedings were prejudicial to him. *See* [*id.* at ¶¶ 68d.–e.]. The Denver District Court denied the Emergency Motion to Enjoin, following a hearing on June 8, 2016. [*Id.* at ¶ 70].

Also on June 8, 2016, Plaintiff alleges that the Public Trustee's website was unavailable and that he could not access relevant information pertaining to the foreclosure sale set for June 9, 2016. [*Id.* at ¶¶ 86–87]. Accordingly, Plaintiff went to the Public Trustee's office that same day and asked "Public Trustee employees questions concerning the requirements, administration, and oversight of bids and auction sales." [*Id.* at ¶ 88]. According to Plaintiff, an employee named Juan Guzman interrupted his discussion and informed other employees not to answer any of his questions. [*Id.* at ¶¶ 89–90]. Allegedly, Mr. Guzman told Plaintiff, "[w]e will continue with our statutory obligations." [*Id.* at ¶ 91].

Accordingly, the Public Trustee sale of the Property was scheduled for June 9, 2016. [*Id.* at ¶ 92]. On June 7, 2016, LSF9 bid a sum of $570,819.45 for the Property, which was the winning bid. [*Id.* at ¶ 84]. On June 23, 2016, Plaintiff initiated the instant suit "in response to ORDER AUTHORIZING SALE issued on April 26, 2016 by the Denver District Court in Case

Number 2016CV030555."   [*Id.* at ¶ 1].   Essentially, Plaintiff challenges the Rule 120 proceedings, the OAS, and the Defendants' actions in connection with the third foreclosure proceeding.  Specifically, Plaintiff levies three constitutional claims under 42 U.S.C. § 1983 for violations of his Fourteenth Amendment rights to due process by all Defendants (Claim I), violations of his Fourteenth Amendment rights to equal protection by all Defendants (Claim II), and violations of his Fourteenth Amendment rights due to the City Defendants' implementation of unconstitutional policies and practices (Claim III); in addition, Plaintiff asserts violations of Title II of the Americans With Disabilities Act ("ADA") by the City Defendants (Claim IV), violations of the FDCPA by all Defendants (Claim V), and that the Defendants' acts or omissions constituted intentional infliction of emotional distress ("IIED") (Claim VI).  *See* [*id.* at 34–43].  Plaintiff requests all appropriate relief at law and equity; declaratory relief and other appropriate equitable relief; economic losses on all claims; compensatory and consequential damages; punitive damages on all claims; attorney's fees and costs; pre and post-judgment interest; and any further relief deemed just and proper by the court.  [*Id.* at 44].

## PROCEDURAL HISTORY

On July 14, 2016, the City Defendants filed their Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  [#4].  On July 15, 2016, Mr. Tatten filed his Ex Parte Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Motion for Temporary Restraining Order"). [#7].  Plaintiff's Motion for Temporary Restraining Order sought to enjoin LSF9 from "engaging in any acts or actions concerning eviction or possession of Tatten's home."  [*Id.* at ¶ 6].  On July 19, 2016, the Honorable Lewis T. Babcock denied the Motion for Temporary Restraining Order [#9], and Magistrate Judge Gordon P. Gallagher issued an Order drawing case [#12].

On July 25, 2016, Plaintiff filed a Motion for Entry of Default against LSF9 that the Clerk of the Court denied for Plaintiff's failure to prove service on LSF9. *See* [#17; #18]. Mr. Tatten then filed a "Motion to Extend the Time for Service of Summons and Complaint Pursuant to FED.R.Civ.P.4(m)," and the undersigned Magistrate Judge granted Plaintiff an additional thirty-days to properly serve LSF9. [#28;#29]. On September 27, 2016, LSF9 returned an executed waiver of service [#31] and, on November 7, 2016, filed its Motion to Dismiss. [#34]. In response to LSF9's Motion to Dismiss, Plaintiff filed an Amended Complaint and Jury Demand on November 28, 2016. [#44]. However, given Mr. Tatten's noncompliance with this District's Local Rules of Civil Practice and the applicable Federal Rules of Civil Procedure, the undersigned Magistrate Judge struck Plaintiff's Amended Complaint.[2] [#45]. By that same Minute Order, this court directed Plaintiff to file a proper motion to amend and amended complaint no later than December 6, 2016. [*Id.*].

By Minute Order, the undersigned Magistrate Judge scheduled a motions hearing on the pending motions to dismiss for December 19, 2016, at 2:00 p.m. [#39]. However, Mr. Tatten failed to appear for the motions hearing, and the undersigned Magistrate Judge issued an Order to Show Cause as to why the court should not dismiss Plaintiff's case for failure to prosecute or for his failure to comply with an order of this court. *See* [#47]. In addition, this court explained that it would issue a recommendation on the pending motions to dismiss without oral argument. [*Id.*]. Plaintiff responded to the Order to Show Cause, explaining that his cognitive disabilities render it difficult for him to remember scheduled appointments and, in addition, Plaintiff

---

[2] While Mr. Tatten is proceeding *pro se*, he is still bound to follow the same rules of procedure and substantive law as represented parties. *See Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012). Although Mr. Tatten proceeds *pro se*, he is also an attorney, and is not entitled to the indulgence that a *pro se* litigant's pleadings and filings be construed liberally. *See Tatten v. Bank of Am. Corp.*, 562 F. App'x 718, 720 (10th Cir. 2014).

requested that this court reconsider its decision to issue a recommendation on the pending motions to dismiss without oral argument. [#48; #52]. This court discharged the Order to Show Cause on December 22, 2016, and denied Plaintiff's request for additional oral argument on the motions to dismiss. *See* [#51].

On January 11, 2016, Mr. Tatten filed his Motion to Amend. [#53]. Per this court's order, the City Defendants and LSF9 (collectively, "Defendants") filed their responses on January 19 and 20, 2016, respectively. [#57; #58]. No replies were permitted. In addition, Plaintiff filed a response and the City Defendants a reply to its Motion to Dismiss and, although Plaintiff failed to respond to LSF9's Motion to Dismiss, the time to do so has since expired and nothing precludes this court for issuing a Recommendation on a pending motion at any time. *See* D.C.COLO.LCivR 7.1(d). Accordingly, the pending motions are ripe for recommendation.

## LEGAL STANDARD

### I.      Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *Image Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)). Under Rule 12(b)(1), a court may dismiss a complaint for lack of subject-matter jurisdiction. Doing so is not a determination on the merits of the case; rather, it is a decision that the court lacks the authority to adjudicate the action. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of

limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court that lacks jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Id.*  Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms:  a facial attack or a factual attack. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001); *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002.  Mere conclusory allegations of jurisdiction are insufficient. *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  Nevertheless, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.*  As explained in *Holt v. United States*, "the jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." 46 F.3d at 1002.

## II.     Rule 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even *pro se* litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible.").

The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Should the court receive and consider materials outside the complaint, the court may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant responded by supplying its own extrinsic evidence. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004). However, a district court may consider legal arguments contained in a brief in opposition to dismissal or documents referred to in the complaint that are central to a plaintiff's claim if the Parties' do not dispute their authenticity without converting the Rule 12(b)(6) motion into a summary judgment motion. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). In addition, the court may consider documents subject to judicial notice, including court documents and matters of public record. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

III.     **Rule 15(a)**

If a party files a motion to amend prior to the expiration of the deadline for joinder of

parties and amendment of pleadings, Rule 15(a) governs whether to grant the movant leave to

amend; there is no requirement to also establish good cause to amend the scheduling order under

Rule 16(b).  *See Fernandez v. Bridgestone/Firestone, Inc*., 105 F. Supp. 2d 1194, 1195 (D. Colo.

2000).  Rule 15(a) provides that leave to amend "shall be freely given when justice so requires."

Fed. R. Civ. P. 15(a).  The court may refuse leave to amend upon a showing of undue delay,

undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies

by amendments previously allowed, or futility of amendment.  *Frank v. U.S. West, Inc.,* 3 F.3d

1357, 1365 (10th Cir. 1993).

For example, courts will generally deny a motion to amend as untimely when the moving

party offers no adequate explanation for the delay.  *See, e.g.*, *Panis v. Mission Hills Bank,*

*N.A.,* 60 F.3d 1486, 1495 (10th Cir. 1995) ("untimeliness in itself can be a sufficient reason to

deny leave to amend, particularly when the movant provides no adequate explanation for the

delay"); *Fed. Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir. 1987) ("Courts have

denied leave to amend in situations where the moving party cannot demonstrate excusable

neglect.  For example, courts have denied leave to amend where the moving party was aware of

the facts on which the amendment was based for some time prior to the filing of the motion to

amend.").  In addition, a court may dismiss a motion to amend if amendment is futile, *i.e.*, the

amended complaint would be subject to dismissal for any reason.  *See generally Watson v.*

*Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (holding that futility includes if the amendment

would not survive a motion for summary judgment).  Ultimately, whether to allow amendment is

within the trial court's discretion. *Burks v. Oklahoma Publ'g Co.,* 81 F.3d 975, 978–79 (10th Cir. 1996).

## ANALYSIS

### I.      Dismissal Pursuant to Rule 12(b)(1)

Defendants argue for dismissal of Plaintiff's claims (except for his ADA claim) on the basis that this court lacks subject matter jurisdiction over those claims.  First, Defendants argue that the *Rooker-Feldman* doctrine bars Claims I, II, III, V, and VI, as each is an attempt to seek appellate-type review of a final state court decision. *See* [#4 at 6; #34 at 5].  Second, the City Defendants argue that the Colorado Governmental Immunity Act ("CGIA") bars Plaintiff's tort claim against the City Defendants.  [#4 at 15].  This court considers these arguments below.[3]

### A.      The *Rooker-Feldman* Doctrine

"*Rooker-Feldman* is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012).  It "precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court." *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller)*, 666 F.3d 1255, 1261 (10th Cir. 2012).  However, courts in this Circuit have reasoned that the *Rooker-Feldman* doctrine does not apply to issues relevant to the Rule 120 proceedings prior to the foreclosure sale. *See e.g., Niederquell v. Bank of Am., N.A.,* No. 11–cv–03185–MSK–MJW, 2012 WL

---

[3] Although Plaintiff filed his Motion to Amend, which may moot Defendants' Motions to Dismiss, *Strich v. United States*, No. 09-cv-01913-REB-KLM, 2010 WL 14826, at *1 (D. Colo. Jan. 11, 2010) (citations omitted) ("The filing of an amended complaint moots a motion to dismiss directed at the complaint that is supplanted and superseded."), this court must first determine whether it has subject matter jurisdiction to consider Plaintiff's Complaint. *Herrera v. Alliant Specialty Ins. Servs., Inc.*, No. 11–00050–REB–CBS, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion to dismiss").

1578060, at *3 (D. Colo. May 4, 2012); *In re Miller*, 666 F.3d at 1262 n.6; *Rousseau v. Bank of New York*, Civil Action No. 08–cv–00205–PAB–BNB, 2009 WL 3162153 (D. Colo. Sept. 29, 2009). Rather, *Rooker-Feldman* bars claims seeking to overturn the *final* outcome of a Rule 120 proceeding. *See Mayotte v. US Bank Nat'l Ass'n*, No. 14-CV-3092-RBJ-CBS, 2016 WL 943781, at *4 (D. Colo. Mar. 14, 2016) (discussing *Dillard v. Bank of N.Y.*, 476 F. App'x 690, 692 n.3 (10th Cir. 2012) (holding that *Rooker-Feldman* barred Ms. Dillard's suit she "[was] attempting to *completely undo* the foreclosure and eviction proceedings, which were both final before she ever initiated [her] suit.")).

Thus, the inquiry focuses on whether the foreclosure proceedings were sufficiently final when Plaintiff filed his Complaint. *Id.* This can occur in one of two ways. First, the foreclosure proceedings are final for purposes of *Rooker-Feldman* if the state court confirmed the Public Trustee's sale of the foreclosed upon property. *See McDonald v. J.P. Morgan Chase Bank, N.A.*, No. 12-CV-02749-MSK, 2014 WL 334813, at *3 (D. Colo. Jan. 30, 2014). Second, when, at a minimum, Plaintiff's redemption rights pursuant to Colo. Rev. Stat. § 38–38–501 have expired. *See Castro v. Kondaur Capital Corp.*, No. 11-CV-03298-CMA-KLM, 2012 WL 3778346, at *5 (D. Colo. Aug. 14, 2012) ("Accordingly, because Plaintiffs' rights were extinguished prior to the filing of this lawsuit, application of the *Rooker–Feldman* doctrine prevents the Court from determining their rights in the sold property."). Section 38–38–501 provides that "[u]pon the expiration of all redemption periods" title to the foreclosed property vests in the "holder of the certificate of purchase" or, in the absence of any redemption periods, "upon the close of the officer's business eight business days after the sale." Colo. Rev. Stat. § 38–38–501.

Here, the Public Trustee's sale occurred on June 9, 2016, and LSF9 is the holder of the certificate of purchase [#55-8 at 1],[4] meaning that LSF9's title in the Property vested on June 21, 2016.  Accordingly, as of June 23, 2016, the date Plaintiff filed his Complaint, his rights in the Property had extinguished.  *See Mayhew v. Cherry Creek Mortg. Co., Inc.*, No. 09–cv–00219–PAB–CBS, 2010 WL 935674, at *10 (D. Colo. Mar.10, 2012).  Nevertheless, Plaintiff's claims may survive to the extent they do not seek to undo the foreclosure sale of the Property.  *Cf. Zeller v. Ventures Trust 2013-I-NH*, No. 15-CV-01077-PAB-NYW, 2016 WL 745373, at *6 (D. Colo. Feb. 1, 2016) (noting that *Rooker-Feldman* bars claims seeking to undo the foreclosure proceedings).

### 1. Claims I and II:  Due Process and Equal Protection under the Fourteenth Amendment

Plaintiff's Claims I and II allege that Defendants violated his Fourteenth Amendment rights to due process and equal protection, because Plaintiff had a constitutional right to a "Rule 120 hearing that was free from prejudice and discrimination."  [#1 at ¶¶ 143, 163].  Essentially, Plaintiff challenges the Defendants' actions in connection with the third Rule 120 proceeding and subsequent foreclosure of the Property, because:  (1) the City Defendants knew or should have known that the applicable statute of limitations barred LSF9's foreclosure on the Property;

---

[4] This court finds it appropriate to take judicial notice of the Public Trustee's Certificate of Purchase of the Property [#55-8 at 1] without converting the Motions to Dismiss to ones for summary judgment.  *See* Fed.R.Evid. 201(b)(2) (A court may take judicial notice of a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."); *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1286 (D. Colo. 2009) ("Facts subject to judicial notice may be considered in a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.").  In addition, LSF9 received its Public Trustee Confirmation Deed on July 5, 2016 [#55-9], another event that extinguishes Plaintiff's rights in the Property, *Beeler Properties, LLC v. Lowe Enterprises Residential Inv'rs, LLC*, No. CIV.A.07-CV-00149MSK, 2007 WL 1346591, at *3 (D. Colo. May 7, 2007), and *Rooker-Feldman* applies even if the foreclosure sale becomes final *after* Plaintiff initiated his federal suit.  *McDonald*, 2014 WL 334813, at *3–4.

(2) Defendant Johnson allowed the foreclosure sale to proceed, despite Plaintiff's objections; and (3) the Rule 120 proceedings were prejudicial and discriminatory towards Plaintiff, a disabled homeowner, because the judge made conclusions of law and fact that were outside the scope of his authority and did not accommodate his cognitive disability. *See, e.g.*, [#1 at ¶¶ 4–12, 14–15, 33–34, 143–160, 165–180].

Defendants argue that the *Rooker-Feldman* doctrine bars these claims, because Plaintiff requests that this court reexamine the proceedings and judgment of the state court. *See* [#4 at 7; #34 at 6]. In response to the City Defendants' Motion to Dismiss, Plaintiff argues that his Complaint "seeks relief from certain statements, actions, and conduct attributed to the City Defendants," and that the application of the *Rooker-Feldman* doctrine is factually and legally inconsistent with his Complaint. *See* [#25 at 3, 4]. For the following reasons, this court respectfully disagrees.

First, as to Plaintiff's due process claim (Claim I), the court in *Driskell v. Thompson* explained, "[t]o the extent Plaintiff seeks to state a claim alleging a violation of his due process rights pursuant to the . . . Fourteen Amendment[], such a claim would challenge the judicial process engaged in by the state courts. . . . [and] would impermissibly involve a reexamination of the underlying state proceedings and judgments." 971 F. Supp. 2d 1050, 1064–65 (D. Colo. 2013). Here, Plaintiff seeks declaratory and equitable relief in addition to damages, and frequently asserts that the Rule 120 proceeding and OAS are erroneous, that the foreclosure on the Property is void and unenforceable, and that Plaintiff is the sole lawful owner of the Property. *See, e.g.*, [#1 at ¶¶ 2–9, 12, 48, 60–62, 155; *id.* at 44]. Plaintiff also dedicates an entire section of his Complaint wherein he specifically challenges the Rule 120 judge's conclusions of law and fact. *See* [*id.* at ¶¶ 43–65].

Accordingly, Plaintiff's due process claim would necessarily require this court to reexamine the procedural sufficiency of the Rule 120 hearings and related state court proceedings. *See Driskell*, 971 F. Supp. 2d at 1064–65. Moreover, Plaintiff already challenged the validity of the OAS in Denver District Court on June 8, 2016, by filing his Emergency Motion to Enjoin that argued, *inter alia*, that the Rule 120 proceeding violated his due process rights, which the Denver District Court denied.[5]  *See* [#1 at ¶¶ 68, 70]; *Yokomizo v. Deutsche Bank Sec., Inc.*, No. 11-CV-01630-CMA-KLM, 2011 WL 2912691, at *2 (D. Colo. July 20, 2011) ("To the extent that Plaintiff alleges that the foreclosure proceedings were rife with procedural mishaps . . . the more appropriate remedy is to pursue an independent action in state court" that challenges the OAS and sale of the property).  Thus, the *Rooker-Feldman* doctrine bars any decision by this court on Plaintiff's due process claim.  *See Dillard v. Bank of N.Y.*, No. 09-CV-03008-WYD-BNB, 2011 WL 2728925, at *6 (D. Colo. May 9, 2011) (recommending dismissal of Ms. Dillard's due process claim as barred by *Rooker-Feldman*, because the state courts had already issued final decisions on the matter).

Similarly, Plaintiff's equal protection claim largely reiterates his allegations that form the basis of his due process claim, *i.e.*, that Defendants knew the statute of limitations barred foreclosure, but proceeded with foreclosure nonetheless, which violates his equal protection rights because he is disabled.  *See* [#1 at 37–39].  Again, the basis for this claim centers on matters previously adjudicated by the Denver District Court that issued the OAS and would require review of a decision that has become final; therefore, "granting Plaintiff[] the relief requested here would require this Court to invalidate a state court judgment"—relief the *Rooker-Feldman* doctrine precludes.  *Sladek v. Bank of Am., NA*, No. 13-CV-03094-PAB-MEH, 2014

---

[5] And, as noted, Plaintiff filed a similar motion in this case that Judge Babcock denied.  *See* [#7; #9].

WL 8105182, at *6 (D. Colo. July 10, 2014) (recommending dismissal of the plaintiffs' equal protection claim under *Rooker-Feldman*).

Based on the foregoing, this court concludes that Plaintiff's due process and equal protection claims (Claim I and II) necessarily require an appellate-like review of the Rule 120 proceedings and subsequent foreclosure sale of the Property in violation of *Rooker-Feldman*. This conclusion holds true even to the extent Plaintiff seeks monetary damages pursuant to § 1983 for constitutional violations allegedly caused by the Rule 120 proceeding and subsequent foreclosure sale. *See Kenmen Eng'g v. City of Union*, 314 F.3d 468, 477 (10th Cir. 2002) (holding that the *Rooker-Feldman* doctrine barred the plaintiffs' request for monetary relief for alleged due process violations stemming from the state-court proceedings, because the claim was "inextricably intertwined" with the state-court judgment). Consequently, this court respectfully RECOMMENDS that Plaintiff's due process and equal protection claims (Claims I and II) be DISMISSED.

### 2.    Claims III, V, and VI

Defendants also argue that the *Rooker-Feldman* doctrine bars Plaintiff's Claims III, V, and VI for the same reasons discussed above. *See* [#4 at 7; #34 at 7]. However, this court respectfully disagrees.

First, Plaintiff's Claim III asserts that the City Defendants violated his Fourteenth Amendment rights to due process and equal protection by failing to train and supervise its employees. *See* [#1 at 40]. Specifically, Plaintiff alleges that the City Defendants failed to train and supervise its employees on how to implement foreclosures in accordance with State laws and Rule 120, or in accordance with due process and equal protection, especially when dealing with disabled persons. *See* [*id.*]. Based on these allegations, it does not appear that Plaintiff's Claim

III seeks an appellate-type review of the Rule 120 proceeding and subsequent foreclosure sale. Rather, Plaintiff attempts to use his experience to establish a policy or custom of constitutional violations by the City Defendants and their employees who implement foreclosures within the state. *See Rigg v. City of Lakewood*, 37 F. Supp. 3d 1207, 1212 (D. Colo. 2014) (holding that "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability" under § 1983).  Accordingly, this court concludes that the *Rooker-Feldman* doctrine does not bar Claim III.

Similarly, this court concludes that the *Rooker-Feldman* doctrine does not bar Claims V and VI.  Claim V alleges that Defendants violated several provisions of the FDCPA.  [#1 at 42–43].  And, although the actions giving rise to Plaintiff's FDCPA claim occurred prior to the Rule 120 proceeding and relate to the foreclosure of the Property, Plaintiff's FDCPA claim is "not an attack on the judgment or proceedings . . . but rather [a] claim[] that could have been brought regardless of what occurred at the state-court level." *Amerson v. Chase Home Fin. LLC*, No. 11-CV-01041-WJM-MEH, 2012 WL 1686168, at *10 (D. Colo. May 7, 2012) (citation omitted). Likewise, it appears that Plaintiff's IIED claim (Claim VI) arises from conduct that occurred prior to the Rule 120 proceeding or that was independent of the Rule 120 proceeding.  *See* [#1 at 16–17, 21–22].  Thus, the state-court judgment does not appear to be the sole cause of Plaintiff's IIED injury.[6]  *See McDaniel v. John Suthers*, No. CIVA 08CV00223WDMMEH, 2008 WL

---

[6] However, to the extent that Plaintiff's Complaint can be interpreted as alleging an IIED claim against Defendants based solely on the Rule 120 proceeding, this court recommends that Plaintiff's IIED claim (Claim VI) be dismissed under the *Rooker-Feldman* doctrine.  As discussed in detail below, this court also recommends dismissal of Plaintiff's IIED claim (Claim VI) against all Defendants for lack of subject matter jurisdiction based on sovereign immunity conferred by the CGIA, or in the alternative, for failure of state a cognizable claim.

18

4527697, at *6 (D. Colo. Oct. 2, 2008) (citation omitted) (holding that *Rooker-Feldman* bars only those claims caused by a state court judgment).

Based on the foregoing, this court respectfully RECOMMENDS that Defendants' Motions to Dismiss be DENIED as to Plaintiff's Claims III, V, and VI on *Rooker-Feldman* grounds.

### B.      Claim VI – The CGIA

The CGIA bars actions in tort against public employees and entities, subject to certain provisions waiving immunity. *Medina v. State*, 35 P.3d 443, 453 (Colo. 2001). "Governmental immunity raises a jurisdictional issue." *Springer v. City & County of Denver,* 13 P.3d 794, 798 (Colo. 2000).

The CGIA provides that a "public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort." Colo. Rev. Stat. § 24–10–106(1). However, in limited circumstances, public entities waive their sovereign immunity for injuries resulting from, *inter alia*, the operation of a public hospital or correctional facility; any dangerous condition in a public building; a dangerous condition on a public highway, road, or street that physically interferes with the movement of traffic; a dangerous condition caused by failure to properly maintain stop signs; dangerous conditions caused by accumulation of ice or snow; or for dangerous conditions of areas open to the public, maintained by the public entity. *Id.* §§ 24–10–106(1)(a)–(i). The term "public entity" is defined as "the state, county, city and county, municipality, school district . . . and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law." *Id.* at § 103(5). Here, there is no dispute that the City and County of Denver constitutes a "public entity."

Similarly, the CGIA also covers "public employees," defined as "an officer, employee, servant, or authorized volunteer of the public entity." *Id.* at § 103(4).  Here, Defendant Johnson, as Public Trustee for the City and County of Denver, is a "public employee."  Specifically, the CGIA provides

> [a] public employee shall be immune from liability in any claim for injury . . . which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing injury was willful and wanton . . .

Colo. Rev. Stat. § 24-10-118(2)(a).

Whether an action lies or could lie in tort "depends on the factual basis underlying the claim and, specifically, the nature of the alleged injury." *First Nat'l Bank of Durango v. Lyons*, 349 P.3d 1161, 1164 (Colo. App. 2015).  Thus an action lies or could lie in tort if the defendant's duties, which are implied by law, are designed to protect against the risk of harm to persons of property.  *Foster v. Bd. of Governors of the Colorado State Univ. Sys. by & on behalf of Colorado State Univ.*, 342 P.3d 497, 501 (Colo. App. 2014).  Here, Mr. Tatten's "state law claim for outrageous conduct [*i.e.*, IIED] is governed by the [CGIA]." *Parker v. Salzman*, No. 11-CV-02192-REB-CBS, 2014 WL 3561119, at *8 (D. Colo. July 17, 2014).

### 1.    Notice

Pursuant to section 24–10–109(1), a plaintiff must file written notice with the public entity or public employee "within one hundred eighty-two days after the date of discovery of the injury, regardless of whether the person knew all of the elements of a claim or of a cause of action for such injury."  The issue of proper notice is a jurisdictional prerequisite to bringing any

action under the CGIA.[7]  *See Bassett v. Klinkler*, No. 13-CV-03391-MJW, 2014 WL 5444086, at

*4 (D. Colo. Oct. 27, 2014).  "When a plaintiff fails to plead compliance with the CGIA, and a

court addresses the case in the context of a motion to dismiss, the court must accept as a matter

of 'fact' that the plaintiff failed to comply with the notice provisions."  *Aspen Orthopedics &*

*Sports Med., LLC v. Aspen Valley Hospital Dist.*, 353 F.3d 832, 840 (10th Cir. 2003).  "This lack

of compliance, then, is a jurisdictional issue."  *Id.*

The City Defendants argue that the CGIA bars Plaintiff's IIED claim (Claim VI), because

Plaintiff failed to comply with the notice provisions of Colo. Rev. Stat. § 24–10–109, which is a

jurisdictional prerequisite to any CGIA action.  *See* [#4 at 16–17].  Specifically, Plaintiff

hand-delivered his "Notice of Intent to Sue the City and County of Denver and Clerk and

Recorder" on June 1, 2016; however, the potentially relevant allegations to his IIED claim

occurred on June 8 and 9, 2016, "*after* Tatten's Notice of Intent."  [*Id.*].

Here, Plaintiff served his written notice on the City Defendants on June 1, 2016 [#1 at ¶¶

82–83], and, although some of his allegations pertain to conduct that occurred after serving his

written notice, the statute allows a plaintiff to serve such notice even if she did not know all of

the elements of her claim.  Colo. Rev. Stat. § 24–10–109(1).  In addition, Plaintiff's Complaint

lists some of the relevant content provided in his written notice; thus, this court concludes that

Plaintiff complied with the notice provisions under the CGIA.  *See Aspen Orthopedics & Sports*

*Med., LLC*, 353 F.3d at 841 (observing that an allegation of "Plaintiff fully complied with the

[notice] provisions of [section] 24–10–109" would be sufficient to survive a motion to dismiss).

---

[7]  Section 24–10–109(6) also requires a plaintiff to wait at least ninety-days before filing a
complaint after serving the public entity or employ.  Here, Plaintiff filed his Complaint 22-days
after serving his written notice; however, noncompliance with section 24–10–109(6) does not
serve as a jurisdictional bar to maintaining Plaintiff's claim.  *See Dicke v. Mabin*, 101 P.3d 1126,
1130 (Colo. App. 2004).

Therefore, this court declines to recommend dismissal of Plaintiff's IIED claim (Claim VI) for failure to comply with the CGIA's notice requirements.

### 2. "Willful and Wanton"

Although not raised by the Parties, this court interprets the CGIA's waiver of immunity for "willful and wanton" conduct as presenting a subject matter jurisdiction issue rather than a Rule 12(b)(6) issue. *See Martinez v. Estate of Bleck*, 379 P.3d 315, 317 (Colo. 2016) (holding as error the district court's determination that "Bleck had adequately pled that Martinez's conduct was willful and wanton," because the district court should have determined "all issues relating to Martinez's immunity claim, including factual issues, regardless of whether those issues are jurisdictional in nature.").[8]  It is well-settled that this court, as one of limited jurisdiction, must *sua sponte* consider issues of subject matter jurisdiction even if not raised by the Parties. *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).  As an initial matter, "the CGIA does not provide a waiver of immunity for Mr. [Tatten's] outrageous conduct claim" under sections 24–10–106(1)(a)–(i). *Parker*, 2014 WL 3561119, at *8.  Thus, Mr. Tatten cannot maintain his IIED claim against the City and County of Denver.

Similarly, this court concludes that Defendant Johnson's conduct was not "willful and wanton" under section 24–10–118(2)(a).  To constitute "willful and wanton" conduct, Defendant

---

[8] To the extent that this court misapprehends the holding in *Martinez*, this court also recommends dismissal of Plaintiff's IIED claim (Claim VI) on the basis that Plaintiff fails to allege that Defendant Johnson's conduct was "willful and wanton," as required under sections 24–10–110(5)(a) and 24–10–110(5)(b).  This is because Plaintiff relies on the conduct of other Public Trustee employees, which does not establish Defendant Johnson's liability under CGIA, *see A.B. ex rel. B.S. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226, 1259 (D. Colo. 2011), and his own self-serving, conclusory allegations that Defendant Johnson acted "willfully and wantonly"—allegations that are insufficient to establish liability.  *See Robinson v. City & Cty. of Denver*, 39 F. Supp. 2d 1257, 1264 (D. Colo. 1999) ("Conclusory allegations therefore do not satisfy section 24–10–110(5)."); *Wilson v. Meyer*, 126 P.3d 276, 282–83 (Colo. App. 2005) (holding that conclusory allegations of "willful and wanton" conduct are insufficient).

Johnson "must be consciously aware that [her] acts or omissions create danger or risk to the safety of others, and [she] then act, or fail to act, without regard to the danger or risk." *Gray v. Univ. of Colorado Hosp. Auth.*, 284 P.3d 191, 198 (Colo. App. 2012); *accord Martinez*, 379 P.3d at 323 (holding that "willful and wanton" conduct "must exhibit a conscious disregard of the danger."). Thus, the facts presented must demonstrate that Defendant Johnson's conduct "exhibit[ed] a conscious disregard for the danger." *Martinez*, 379 P.3d at 323.

Plaintiff alleges that the acts or omission of each Defendant "were intentional or reckless and extreme and outrageous," and were the legal and proximate cause of his "severe emotion distress," his "damages," his "actual physical, cognitive" distress, and his "injuries" that include "threat to his health, safety, and welfare." [#1 at ¶¶ 209–213]. In addition, Mr. Tatten alleges that the "facts, circumstances, records, documents, and a partial transcript from the Rule 120 hearing establish that the acts or omissions of . . . [Defendant Johnson] were committed intentionally, maliciously, willfully, wantonly, and/or in recklessly to collect a time-barred debt from Tatten, a disabled homeowner." [*Id.* at ¶ 12].

Upon review Mr. Tatten's Complaint, it appears that the premise for his IIED claim (Claim VI) against Defendant Johnson stem from the Rule 120 proceeding and his various, limited interactions with the Denver Public Trustee's office and its employees. [*Id.* at 16]. These interactions include February 2016 email correspondences with John Davies regarding LSF9's foreclosure of the Property [*id.* at ¶ 72–73]; February and March 2016 email correspondences with Juan Guzman regarding LSF9's foreclosure [*id.* at ¶¶ 74–75, 78–81]; his hand delivering of his notice of intent to sue to the Public Trustee's office [*id.* at ¶¶82–83]; his allegations that the Public Trustee's website was being updated on June 8, 2016, [*id.* at ¶¶ 86–87]; and his allegations that Juan Guzman instructed Public Trustee employees to not answer his

questions [*id.* at ¶¶88–91].  Notably, these allegations do not refer to Plaintiff's interactions with Defendant Johnson; instead, Plaintiff alleges that Defendant Johnson's conduct, in administering the foreclosure sale of the Property, was "willful and wanton."

The factual allegations in Plaintiff's Complaint do not support a finding that Defendant Johnson's conduct was "willful and wanton" for purposes of waiving her immunity under the CGIA, and there is no other evidence in the record for this court to draw such a conclusion. Rather, these allegations demonstrate that Defendant Johnson performed her duties as Denver Public Trustee—duties that included administering the foreclosure sale of the Property in accordance with the OAS issued by the Denver District Court.  This court concludes that simply because Plaintiff is aggrieved by Defendant Johnson's conduct, the factual allegations in the record do not justify a conclusion that her conduct "exhibit[ed] a conscious disregard for the danger" or risk to Plaintiff's safety.  *Martinez*, 379 P.3d at 323.  Accordingly, this court RECOMMENDS that Plaintiff's IIED claim (Claim VI) be DISMISSED as barred by the CGIA.

## II.     The Motion to Amend

Before reaching Defendants' Rule 12(b)(6) arguments, this court considers Mr. Tatten's Motion to Amend, as an amended pleading supersedes the pleading it modifies thereby mooting any motions to dismiss directed at an inoperative pleading.  *Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006).  The time to amend as a matter of course has expired; however, because the court has yet to set a deadline for amendment of pleadings and joinder of parties, Mr. Tatten brings his Motion to Amend pursuant to Rule 15(a).  *See Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000).  Rule 15(a) provides, "leave to amend shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, "[t]his policy is not limitless and must be balanced against [Rule] 7(b)(1), which governs the

requirements for all motions and provides that any motion 'shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought.'" *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) (citation omitted).   Accordingly, the movant must "give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it." *Id.* at 1186–87 (holding that a district court may properly deny requests to amend pleadings when no proper motion is before it, because district courts are not required to "engage in independent research or read the minds of litigants to determine if information justifying an amendment exists."). Nevertheless, a district court has discretion to deny leave to amend upon a showing of undue delay, futility, or undue prejudice to the nonmoving party. *See generally Shifrin v. Toll*, 483 F. App'x 446, 450 (10th Cir. 2012) (citation omitted).

A district court may deny a motion to amend "when the party filing the motion has no adequate explanation for the delay." *Frank*, 3 F.3d at 1365–66; *see also Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir.1994) ("[U]nexplained delay alone justifies the district court's discretionary decision."). Further, courts are justified in denying leave to amend "when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, . . . to salvage a lost case by untimely suggestion of new theories of recovery, . . . [or] to present theories in seriatim in an effort to avoid dismissal." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (internal quotations and citations omitted). Thus, the inquiry focuses on the reasons for the delay. *Id.*

Here, Defendants oppose Mr. Tatten's Motion to Amend on two grounds.   First, Defendants argue that Plaintiff's proposed amendments are futile, because the *Rooker-Feldman*

doctrine bars Plaintiff's claim and, alternatively, his proposed amendments fail to state a claim. *See* [#57 at 6–7; #58 5–6]. Second, LSF9 argues that Plaintiff's Motion to Amend is untimely, as he offers no explanation for why he waited until January 11, 2016, to file his Motion to Amend when the court directed him to file no later than December 6, 2016, and the relevant proposed allegations occurred in July 2016. *See* [#58 at 4–5]. Because this court concludes that this latter argument justifies denial of the Motion to Amend, it focuses on it.

The Motion to Amend states that Plaintiff seeks to amend his Complaint because "[a]fter June 23, 2016, Defendant City and County of Denver, Defendant Debra Johnson, and Defendant LSF9 Master Participation Trust committed acts which are relevant and material to the facts and claims contained within the original complaint and jury demand file (sic) in this action." [#53 at 1–2]. Specifically, Plaintiff proposes to include new facts that largely occurred between June 23, 2016, and July 8, 2016, *see* [#53-1 at ¶¶ 140–141, 143–149, 150–162, 166–169, 173–176], as well as three additional claims against Defendants for violations of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6–1–101 *et seq.*; the Colorado Foreclosure Protection Act ("CFPA"), Colo. Rev. Stat. §§ 6–1–1101 *et seq.*; and negligent infliction of emotional distress. [*Id.* at 80–88]. However, Plaintiff offers no explanation as to why he delayed amending his complaint, either from the time he could ascertain the need for amendment in July, or after the court's order striking his attempt to amend in November. *See Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1021 (10th Cir. 2011) (affirming the district court's denial of leave to amend because the plaintiff offered no explanation to justify the delay in amending).

Plaintiff originally filed his proposed First Amended Complaint and Jury Demand without an appropriate motion on November 28, 2016. *See* [#43; #44]. Accordingly, this court

struck Mr. Tatten's filing as non-compliant with the Local Rules and the Federal Rules of Civil Procedure. [#45]. This court's Minute Order dated November 29, 2016, directed Mr. Tatten to file his Motion to Amend no later than December 6, 2016. *See* [*id.*]. Rather, Mr. Tatten filed the Motion to Amend over one month after this deadline and has provided no explanation to this court for the delay, nor did he seek an extension of time to file his Motion to Amend. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (noting that all litigants, even those proceeding *pro se*, must abide by the applicable Federal Rules of Civil Procedure, Local Practice Rules of the District, and Practice Standards of the presiding judge).

Even construing Mr. Tatten's pleadings and filing liberally, there is no explanation to justify his delay in amending. He states no good cause that excuses him from complying with the relevant Federal Rules of Civil Procedure. *Id.* Nor does Mr. Tatten provide any basis for this court to conclude that he has good cause to be excused from this court's order of November 29, 2016. [#45]. Between July and November, Mr. Tatten made other filings, including responding to the Motion to Dismiss filed by the City and County of Denver and Debra Johnson [#25], and a Motion to Extend Time to Serve [#28]. These alleged new facts were within his control when he sought additional time to serve Defendant LSF9, and it appears that some were included in that Motion to Extend Time. *Compare* [#28] *with* [#53-1]. The brief in support of the Motion to Amend appears simply to be the proposed First Amended Complaint, with no justification for the delay. *See* [#55]. While respectful of Mr. Tatten's cognitive limitations, this court finds no basis to excuse him from complying with applicable rules or orders. Accordingly, this court RECOMMENDS that Plaintiff's Motion to Amend be DENIED as untimely.[9]  *See Zisumbo v.*

---

[9] Briefly, even if the motion was timely, this court also recommends denial of Plaintiff's Motion to Amend on futility grounds. First, Plaintiff cannot maintain a CCPA claim against the City Defendants, because they are not businesses dealing with the public. *See Loughridge v.*

*Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1195 (10th Cir. 2015) (affirming the district court's denial of leave to amend, because the plaintiff offered no adequate explanation for his delay in amending even under Rule 15(a)'s more lenient standard).

## III.     The Motions to Dismiss Pursuant to 12(b)(6)

This court now turns to Defendants' arguments for dismissal of Plaintiff's Complaint under Rule 12(b)(6).

### A.     Claim III – Failure to Train & Supervise

To prevail on a failure to train and supervise claim under § 1983, a plaintiff must demonstrate an "affirmative link" between the supervisor-defendant and the constitutional violation—this requires more than the supervisor's "mere knowledge" of her employee's conduct. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citing *Iqbal*, 556 U.S. at 677).   Accordingly, a plaintiff must establish:  (1) the defendant's

---

*Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1185 (D. Colo. 2002).   Similarly, to maintain a CCPA claim, Plaintiff must allege that LSF9's conduct "significantly impacts the *public*," which Plaintiff does not allege, and Plaintiff cannot merely use the CCPA to remedy a purely private wrong. *See NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1135–36 (D. Colo. 2007).   Second, Plaintiff cannot maintain a CFPA claim against either the City Defendants or LSF9, as neither are "foreclosure consultants" nor "equity purchasers" as defined under the statute. *See* Colo. Rev. Stat. §§ 6–1–1103(2)(c) (excluding from "equity purchasers" any person who receives title by a deed from the public trustee as the result of a foreclosure sale, *i.e.*, LSF9), (4)(a) ("foreclosure consultant" includes anyone that does not have a direct interest in the house, but offers services related to stopping or postponing foreclosure sale), (b) (excluding holder or servicer of an evidence of debt secured by a deed of trust on any residence in foreclosure). Third, for the reasons stated above, this court concludes that the CGIA bars Plaintiff's IIED claim against the City Defendants and, thus, would also bar his negligent infliction of emotional distress claim. *See Medina*, 35 P.3d at 453.   And, similarly, Plaintiff's added allegations against LSF9 fail to demonstrate that LSF9's conduct was so extreme or outrageous (in fact, their conduct was consistent with foreclosing on the Property), to maintain an IIED claim, let alone a negligent infliction of emotional distress claim. *See Watson*, 242 F.3d at 1239–40 (holding that futility means that the amendment would not survive dismissal).   Finally, it does not appear to this court that Plaintiff's added factual allegations sufficiently bolster Plaintiff's original claims such that amendment would survive a subsequent Rule 12(b)(6) challenge.   In fact, a vast majority of Plaintiff's factual allegations in his Complaint and proposed Amended Complaint concern Plaintiff's grievances with Bank of America, a non-party.

personal involvement; (2) a causal connection; and (3) a culpable state of mind. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). This is because "[s]ection 1983 does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). The plaintiff must establish a "deliberate, intentional act" by the supervisor-defendant. *See generally Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010).

For liability purposes under § 1983, a municipality cannot be liable for constitutional violations when there is no underlying constitutional violations by any of its officers, nor can it be held liable under the theory of vicarious liability for the constitutional deprivations of its officers. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002). "Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). As relevant here, Mr. Tatten may establish a policy or custom by the City and County of Denver's failure to adequately train or supervise its employees, including Defendant Johnson, so long as that failure results from deliberate indifference to the injuries that may be caused. *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). However, it is not enough for Mr. Tatten to point to a single violation of federal rights—he must also allege that the City and County of Denver has "failed to train its employees to handle recurring situations presenting obvious potential for such a violation." *Allen v. Muskogee*, 119 F.3d 837, 841–42 (10th Cir. 1997).

The City Defendants argue that Plaintiff's Complaint fails to allege a viable failure to train and supervise claim (Claim III), because Plaintiff appears to base his claim on the assertion that the City Defendants should not have proceeded with the foreclosure of the Property given his objections to its validity, and that the City Defendants' employees failed to communicate

properly with Mr. Tatten, a disabled homeowner.  [#4 at 11].  According to the City Defendants, Plaintiff fails to allege any constitutional violations based on the City Defendants' failure to train or supervise.  [*Id.*].

In response, Plaintiff contends that his Complaint adequately alleges that he informed the City Defendants' employees of his cognitive disability, that he sought relevant information from these employees regarding the foreclosure on the Property, and that the employees' failure to provide that information prohibited him from defending his legal and property rights.  [#25 at 5]. For the following reasons, this court respectfully disagrees.

Claim III alleges that the City Defendants "failed to properly instruct, train, supervise, guide, and/or monitor its employees with respect to communicating with the public, including [persons] with a disability."  [#1 at ¶ 182].  Further, that the City Defendants failed to train and/or supervise its employees on Colorado's foreclosure laws, including Rule 120, and failed to train and/or supervise its employees on how to communicate with homeowners, including those with disabilities.  [*Id.* at ¶¶ 183, 185].  According to Plaintiff, this failure led to violations of his due process and equal protection rights under the Fourteenth Amendment.  [*Id.* at 39].

Plaintiff bases Claim III on his limited interactions with Public Trustee employees and his frustrations associated with those encounters.  Specifically, in February and March 2016, Plaintiff emailed John Davies and Juan Guzman (employees of the Public Trustee), seeking information concerning LSF9's foreclosure of the Property.  [*Id.* at ¶¶72–75, 78–81].  And, on at least one occasion, Mr. Guzman apparently provided the information Plaintiff sought.  *See* [*id.* at ¶ 75].  However, Plaintiff alleges that on June 8, 2016, the Public Trustee's website was undergoing maintenance and he was unable to retrieve important information regarding the foreclosure sale set for June 9, 2016.  *See* [*id.* at ¶¶ 86–87].  Thus, he went personally to the

Public Trustee's office to ask its employees for information regarding the foreclosure sale; however, Mr. Guzman instructed these employees not to answer Plaintiff's questions and stated, "[w]e will continue with our statutory obligations." [*Id.* at ¶¶ 88–91].

Based on the foregoing, this court concludes that Plaintiff fails to state a viable failure to train and supervise claim under § 1983. First, Plaintiff's allegations fail to establish a violation of his constitutional rights to due process or equal protection, let alone that Defendant Johnson, as Public Trustee, "promulgated, created, implemented or possessed responsibility for the continued operation of [the] policy" that allegedly violated the plaintiff's constitutional rights. *Dodds*, 614 F.3d at 1199–1200. Next, even if Plaintiff could sufficiently allege a constitutional violation by either Defendant Johnson or her employees, Plaintiff's allegations fail to identify a City and County of Denver policy or custom that was the direct link to Plaintiff's alleged constitutional injuries. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (holding that a municipality may be liable under § 1983 only for its own unconstitutional customs or policies, not for the tortious acts of its employees). Rather, Plaintiff appears to predicate Claim III on his frustrations with Mr. Guzman's instruction to Public Trustee employees not to answer his questions. And, again respectful of Mr. Tatten's cognitive disability and frustrations with the foreclosure of the Property, this court concludes that a single incident as pled does not give rise to municipal liability under § 1983. *See Olsen*, 312 F.3d at 1318 (holding that a single constitutional violation *may* satisfy the requirements for municipal liability under § 1983 only when the violation is a "highly predictable and plainly obvious" consequence of a municipality's failure to train and/or supervise its employees). Therefore, this court respectfully RECOMMENDS that Claim III be DISMISSED.

### B.   Claim IV – the ADA

Title II of the ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.   To state a claim under Title II, Mr. Tatten must allege:   "(1) []he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."   *Cohon ex rel. Bass v. New Mexico Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (internal quotations omitted) (quoting *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007)).

The City Defendants argue for dismissal of Plaintiff's ADA claim (Claim IV), because Plaintiff does not allege how he was excluded from participation in the Public Trustee's foreclosure services or that, even if he was excluded, that it was solely because of his disability. [#4 at 12–13].   In response, Plaintiff argues that his Complaint adequately alleges that he sought information from the Public Trustee's office regarding the foreclosure on the Property, that the Public Trustee's employees refused to provide that information, and that this refusal was because of his cognitive disability.   [#25 at 5].

In his Complaint, Plaintiff alleges that he contacted John Davies (an employee of the Public Trustee) to receive information regarding the foreclosure of the Property, and in that correspondence, Plaintiff informed Mr. Davies that he was cognitively disabled.   [#1 at ¶ 73]. Further, the Public Trustee's website was under maintenance on June 8, 2016, which precluded Plaintiff from receiving relevant information regarding the foreclosure sale of the Property [*id.* at ¶¶ 86–87], and, on upon personally seeking information from Public Trustee employees, Mr.

Guzman instructed employees not to answer his questions. *See* [*id.* at ¶¶ 88–91]. Plaintiff contends that the City Defendants violated the Title II of the ADA by failing to "communicate effectively with Tatten concerning the foreclosure and the actions of [Defendant Johnson];" by failing to train its employees on how to deal with disabled homeowners going through foreclosure; and by maintaining records systems that are inaccessible to Plaintiff. *See* [*id.* at ¶¶ 192–94].

"The ADA addresses three broad categories of discrimination:  disparate treatment, disparate impact, and a failure to provide a reasonable accommodation." *Shepherd v. U.S. Olympic Comm.*, 464 F. Supp. 2d 1072, 1090 (D. Colo. 2006). Here, Plaintiff's ADA claim appears to be one of disparate treatment, *i.e.*, the City Defendants treated him, as a disabled individual, differently than non-disabled individuals, or that they failed to appropriately accommodate him due to his cognitive disability. However, this court concludes that, under any theory, Plaintiff fails to allege a viable ADA claim.

First, it is unclear from the Complaint what relevant information Plaintiff sought from the Public Trustee's employees regarding the foreclosure sale, or how the absence of this information excluded him from receiving the benefits of the City Defendants' services. Next, although Mr. Tatten informed an employee of his cognitive disability, he does not allege that he informed the Public Trustee's employees of the accommodation he needed in order to fully participate in the benefits of its foreclosure services, and nothing indicates that his disability was "obvious" (in fact, he labels his disability as "invisible") so that these employees would know he needed accommodations. *See Robertson*, 500 F.3d at 1197 (explaining that even if a public entity has knowledge of a plaintiff's disability, they must also be aware of the plaintiff's need for specific accommodations, which can be shown if the plaintiff informs the public entity of those

accommodations, or if the disability is "obvious").  Further, other than Plaintiff's conclusory allegations, there is no indication that Mr. Guzman instructed employees not to answer Mr. Tatten's questions, or took or failed to take any action, by reason of Plaintiff's disability.  *See Baker v. Target Corp.*, 398 F. App'x 364, 364–65 (10th Cir. 2010) (affirming the district court's dismissal of the plaintiff's complaint, because the plaintiff failed to allege factual support for his claim that the defendant discriminated against him on the basis of his disability other than conclusory statements to that effect).  Accordingly, this court RECOMMENDS that Plaintiff's ADA claim (Claim IV) be DISMISSED.

### C.      Claim V – the FDCPA

Congress enacted the FDCPA to combat "abusive, deceptive, and unfair debt collection practices" used by many debt collectors.  15 U.S.C. § 1692(a).  The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Accordingly, the FDCPA prohibits debt collectors from engaging in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with collection of a debt," *id.* § 1692d, and limits how and when a debt collector may contact a consumer regarding a debt, *id.* § 1692c.  If a plaintiff can prove a violation of the FDCPA, she may recover actual damages, statutory damages up to $1,000, as well as reasonable attorney's fees.  *See* 15 U.S.C. § 1692k(a).

### 1.   The City Defendants

The City Defendants argue for dismissal of Plaintiff's FDCPA claim (Claim V), because they are not "debt collectors," as defined under the FDCPA.   [#4 at 14–15].   This court respectfully agrees.

Under the definition of "debt collector," the FDCPA explicitly excludes "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of [her] official duties."   15 U.S.C. § 1692a(6)(C).   Here, to the extent the City Defendants' actions in administering the foreclosure sale on the Property can be considered collecting or an attempt to collect a debt, these actions were "in performance of [the City Defendants'] official duties."   *Id.*; *see also Patrick v. Bank of N.Y. Mellon*, No. 11-CV-01304-REB-MJW, 2012 WL 934288, at *15 (D. Colo. Mar. 1, 2012) (holding that a Public Trustee is not a debt collector because of § 1692a(6)(C)).   Even if this exemption did not apply to the City Defendants, Plaintiff fails to allege that the City Defendants' principal purpose is the collection of debts.   *See Hayes v. Shelby Cty. Tr.*, 971 F. Supp. 2d 717, 730 (W.D. Tenn. 2013) (dismissing the plaintiff's FDCPA claim against county officials, utilities, and creditors, because they were not "debt collectors" under the statute).

### 2.   LSF9

LSF9 moves for dismissal of Plaintiff's FDCPA claim for two reasons.   First, Plaintiff's allegations are mostly conclusory and insufficient to state a viable FDCPA, and those that are not conclusory, allege violations that are not applicable to LSF9.   [#34 at 10].   Second, Plaintiff's FDCPA claim fails because the FDCPA does not apply to foreclosure actions.   For the following reasons, this court respectfully agrees.

Here, Mr. Tatten alleges that LSF9 violated multiple provisions of the FDCPA.  [#1 at 42–43].  Specifically, LSF9 violated sections 1692c (prohibiting debt collectors from contacting consumers at inconvenient times and locations), 1692d (prohibiting abusive or harassing collection efforts), 1692e (prohibiting the use of false, deceptive, or misleading debt collection tactis), 1692f (prohibiting unfair and unconscionable collection tactics), and 1692g (requiring the debt collector to provide written validation of the debt to the consumer).  *See* [*id.* at ¶¶ 197–198, 204, 205].  Aside from his general allegations that LSF9 improperly foreclosed on the Property, the only allegations relevant to Plaintiff's FDCPA claim include that LSF9 is a debt collector who sent debt collection letters to Plaintiff without meaningful attorney review.  [*Id.* at ¶¶ 136–137].  However, as LSF9 correctly notes, meaningful attorney review applies only to a law firm that sends a debt collection letter on behalf its client without actually confirming that a debt is due and owing.  *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 302 (2d Cir. 2003).  Here, the Janeway Law firm sent Plaintiff debt collection letters on LSF9's behalf [#1 at ¶73]; however, Janeway Law is not a party to this action.  Thus, Plaintiff's FDCPA claim predicated on a failure of LSF9 to undertake meaningful attorney review fails as a matter of law.

In addition, "[a]lthough not all courts agree on whether and when foreclosure activities are covered by the FDCPA, the majority of courts—including those in this District—have held that foreclosure activities are outside the FDCPA's scope."  *Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1198 (D. Colo. 2015) (citation omitted); *see also Munholland v. Wells Fargo Bank, Nat. Ass'n*, No. 11-CV-03393-RBJ-KMT, 2013 WL 1130592, at *3 (D. Colo. Feb. 25, 2013) (collecting cases).  Here, Plaintiff's allegations arise from LSF9's actions in initiating the Rule 120 proceeding and the correspondences associated with that proceeding—he does not allege that LSF9 "took any action to obtain payment on the debt."  *Obduskey v. Fargo*, No. 15-

CV-01734-RBJ, 2016 WL 4091174, at *3 (D. Colo. July 19, 2016) ("In sum, the Court does not find any reason in plaintiff's complaint or briefs to support deviating from the majority view that foreclosure proceedings are not a collection of a debt.   Mr. Obduskey's FDCPA against McCarthy is dismissed.").   Therefore, this court RECOMMENDS that Plaintiff's FDCPA claim (Claim V) be DISMISSED against LSF9.

### D.   Claim VI - IIED

To maintain an IIED claim (also referred to as an outrageous conduct claim) under Colorado law, Mr. Tatten must allege sufficient facts to show:  "(1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress."  *Nasious v. Two Unknown B.I.C.E. Agents at Arapahoe Cty. Justice Ctr.*, 657 F. Supp. 2d 1218, 1232 (D. Colo. 2009) (internal quotations omitted) (quoting *Archer v. Farmer Bros. Co*., 70 P.3d 495, 499 (Colo. App .2002)).  The tort of IIED creates liability for only a "very narrow type of conduct," *i.e.*, "conduct so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Maiteki v. Marten Transportation Ltd.*, 4 F. Supp. 3d 1249, 1256 (D. Colo. 2013) (quoting *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003) (observing that the level of outrageousness is an extremely high requirement that does not include "[m]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities")).  "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) (quotations and citation omitted).  Initially, it is the court's duty to determine whether reasonable persons could differ on the question of

outrageousness under the presented circumstances.  *Dolin v. Contemporary Fin. Sols., Inc.*, 622 F. Supp. 2d 1077, 1090 (D. Colo. 2009) (dismissing under Rule 12(b)(6) the plaintiffs' IIED claim, because the plaintiffs failed to allege sufficient facts to allow a reasonable person to conclude that the defendant's conduct was outrageous).

LSF9 moves for dismissal of Plaintiff's IIED claim (Claim VI) on two grounds.  First, Plaintiff fails to allege that LSF9's conduct was so extreme and outrageous to maintain an IIED claim and, instead, merely recites the elements for establishing such a claim.  *See* [#34 at 12]. Second, and in the alternative, because Plaintiff's federal law claims fail as a matter of law, the court should decline to exercise supplemental jurisdiction over Plaintiff's state law claim.  [*Id.* at 12–13].  Because this court agrees with LSF9's first argument, it focuses on it.

As discussed, Plaintiff's Complaint alleges that Defendants acts or omissions caused Plaintiff's damages, which include severe emotional distress.  [#1 at ¶¶ 99–100, 208–213]. Similar to the City Defendants, Plaintiff merely asserts that LSF9 acted intentionally, maliciously, willfully, wantonly, and recklessly by foreclosing on a time-barred debt.  [*Id.* at ¶ 12, 15].  The only relevant allegations against LSF9 include:  (1) Bank of America sold Plaintiff's Note to LSF9 on September 29, 2015; (2) LSF9 sent Plaintiff a "NOTICE OF SALE OF OWNERSHIP OF MORTGAGE LOAN" on October 20, 2015; (3) LSF9 initiated the Rule 120 proceeding on February 18, 2016, and sought to foreclose on a time-barred debt; and (4) LSF9 is a debt collector and sent Plaintiff debt collection letters without meaningful attorney review.  [*Id.* at ¶¶ 128, 131–137].  These allegations fail to allege "conduct so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community."  *Maiteki*, 4 F. Supp. 3d at 1256 (quotations and citation omitted).  Moreover, Plaintiff's allegations largely focus on the

conduct of Bank of America, a non-party to this action. *See e.g.*, [*id.* at 22–32]. Accordingly, this court RECOMMENDS that Plaintiff's IIED claim (Claim VI) be DISMISSED against LSF9.

### CONCLUSION

Therefore, for the reasons state herein, this court respectfully **RECOMMENDS** that:

(1)   The City Defendants' Motion to Dismiss [#4] be **GRANTED**;

(2)   LSF9's Motion to Dismiss [#34] be **GRANTED**;

(3)   Mr. Tatten's Motion to Amend [#53] be **DENIED**; and

(4)   Mr. Tatten's Complaint be **DISMISSED**.[10]


Dated:  February 3, 2017                              BY THE COURT:


                                                      s/Nina Y. Wang
                                                      United States Magistrate Judge

---

[10] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).